# Richmond

## PAUL ANTHONY v. COMMONWEALTH OF VIRGINIA.

March 2, 1942.

Record No. 2521.

Present, All the Justices.

The opinion states the case.

*R. I. Overbey,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Carrington Thompson, Special Assistant,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

About dark on Sunday, September 24, 1939, an automobile driven by Paul Anthony collided with another automobile that was being driven in the opposite direction in the town of Altavista. Anthony was tried by the mayor of Altavista on the charge of violating a town ordinance prohibiting the operation of a motor vehicle while intoxicated. The judgment of conviction was appealed to the Circuit Court of Campbell county, where, on June 29, 1940, a *nolle prosequi* was entered by the attorney for the Commonwealth.

On July 22, 1940, a criminal warrant was issued charging Anthony with operating an automobile while intoxicated in violation of the State statute. The first trial, on appeal to the Circuit Court of Campbell county, resulted in a hung jury. On July 31, 1941, another jury returned a verdict of guilty against the accused, on which verdict judgment was entered. From that judgment this writ of error was allowed.

The accused filed a plea of *autrefois acquit* based on the fact that the town of Altavista first convicted him, and, on appeal, refused to prosecute him further on a charge of violating the town ordinance against drunken driving, and that the State warrant upon which he was then being tried was a prosecution for the same act. "As the statute (sec. 4775) now reads, a prosecution under either the State statute or the municipal ordinance for one act, which is a violation of both, is not a bar to the prosecution for the same act by the other sovereign." *Malouf* v. *Roanoke,* 177 Va. 846, 852, 13 S. E. (2d) 319. There was no error in sustaining the demurrer to the plea.

[█ The accused contends that the verdict of the jury was contrary to the law and the evidence. The record shows that the evidence for the Commonwealth and for the accused was in sharp conflict. Witnesses for each side were positive in their statements. Some of the witnesses for the Commonwealth stated that the accused was drunk. Witnesses for the accused, who had equal opportunity to observe the accused and his demeanor before and after the wreck, were positive that he was sober and his actions normal. Under these circumstances, the finding of the jury on the issue of fact is binding upon the court.

The refusal of the court to continue the case on the ground of the absence of material witnesses is assigned as error.

When the case was called for trial, the attorney for the accused moved for a continuance. This motion was supported by an affidavit of the accused and the certificates of two doctors. The accused, in his affidavit, stated that two persons—Mrs. Paul Anthony, his wife, and T. B. Neal—had been duly summoned; that, to his personal knowledge, their evi-

dence was material and pertinent "as to his guilt or innocence of the charge against him;" and that no other witness could or would testify to the material facts within the peculiar knowledge of these two witnesses. In the certificates of the doctors it was stated that on account of their physical condition it was impossible for these witnesses to attend court at Rustburg on July 31, 1941, but that, in all probability, they would be able to attend court at the September term.

[ The certificates of the two doctors and the affidavit of the accused bring the motion well within the general rule, which entitles a litigant to a continuance.

In *Vineyard* v. *Commonwealth*, 143 Va. 546, 550, 129 S. E. 233, we said: "As a general rule, where a witness has been duly summoned and is absent on account of sickness, or for other cause, if the party causing the witness to be summoned makes affidavit that the testimony of the witness is material, not merely cumulative, and that he cannot safely go to trial without his testimony, a continuance ought to be granted, if there is reason for believing that the attendance of the witness can be secured at the next term; unless the court should be satisfied from the circumstances that the object of the motion was to delay the trial and not to prepare for it. *Hewitt* v. *Commonwealth*, 17 Gratt. (58 Va.) 629, 630; *C. & O. Ry. Co.* v. *Newton*, 117 Va. 260, 263, 85 S. E. 461; *Lufty* v. *Commonwealth*, 126 Va. 711, 100 S. E. 829."

The two absent witnesses had testified in the former trial that resulted in a hung jury. Hence, the Commonwealth attorney and the trial judge had heard these witnesses testify and knew the materiality of their testimony. However, the trial court, over the objection of the accused, forced him to write out the facts to which these witnesses would testify. The Commonwealth attorney agreed that if the witnesses were present they would state the facts as written by the attorney for the accused. From this written statement it appears that Mrs. Anthony was the only witness who testified that she had been with her husband the entire day of the wreck, and that she knew that he had not taken a drink since lunch, several hours before the accident.

The pertinent statement of Mr. Neal's testimony was: "I have known Mr. Paul Anthony for about thirty (30) years and I saw him on the night that he had a wreck with a negro near Duncan Owen's Filling Station in Altavista. I saw Mr. Anthony and talked with him for a good while and he appeared to be normal and perfectly sober in every way. He did not seem to be intoxicated with anything, alcohol, or any intoxicant whatsoever. He stayed at the scene of the wreck from thirty (30) to forty-five (45) minutes thereafter and made proper arrangements for taking care of his car. I stood up close to him while I was talking to him and did not smell any liquor on his breath. He got out of his car after the wreck and came across from Owen's Filling Station and I stood there and talked to him about the wreck. He did not say anything about being drunk or having been drinking and there was nothing said at the time about him being drunk.

"Mr. Eades was there and talked to him where he was and did not say anything about him being under the influence of intoxicants. A number of officers were there and I did not hear any of them say anything about arresting him or about him being under the influence of intoxicants.

"Mr. Anthony has a sort of un-natural condition in the manner in which he uses his leg and I have known him to have this condition for a long time. He appears to stagger at all times."

This testimony was to some extent cumulative, but no other witness stated that he had equal opportunity, as Mr. Neal did, to see and talk with the accused such a length of time, nor did any other witness go into details of his contact with Mr. Anthony at or subsequent to the wreck. In addition, Mr. Neal flatly contradicts some of the pertinent testimony of Eades, who seems to have been one of the star witnesses for the prosecution.

The trial court apparently recognized the applicability of the general rule to the facts. However, it based its action in overruling the motion on an exception. The court stated: "I don't accept doctors' certificates in a case like this. * * * . With reference to the motion for a continuance in this case the court is satisfied that they are not *bona fide* and that the

motions are made merely for the purpose of securing a continuance, a further continuance of the case, and for the purpose of wearing it out on the docket. The offense for which the accused is charged was committed on the 24th of September, 1939. The case has been tried three times heretofore. The absent witnesses have heretofore testified in the case and the court presumes that they did their full duty and abided by their oath to tell the truth, the whole truth and nothing but the truth, and the court therefore assumes that they have already stated before the court and before the trial justice and before a jury all the facts they know about the case. The Commonwealth Attorney states that he is willing to admit that the absent witnesses, Mrs. Paul Anthony and Mr. T. B. Neal, if present in person and testifying, would testify to the facts which counsel for the accused state that they will testify to but, of course, the Commonwealth Attorney will be given an opportunity to impeach the testimony or evidence if any it has for the purpose of impeaching any statement or any evidence that they may give. It is the court's understanding that the Commonwealth is to admit that they would testify to such statement of facts if they were present in person and testifying, provided, however, those facts were admissible as evidence, and the Commonwealth Attorney is not required or supposed to admit any facts irrelevant, incompetent or inadmissible, provided, however, that such facts would be irrelevant, incompetent and inadmissible were the witnesses present in person and testifying.

"By Mr. Overbey: Your Honor, please, counsel for the defendant desires to except to the remarks made by the court in this case in the presence of the jury.

"By the Court: No jury is present.

"By Mr. Overbey: May I ask his Honor if the jury is not in the court room?

"By the Court: For the purposes of the record there is no jury. No, gentlemen, retire and agree upon the facts, and all of you gentlemen who were summonsed here to be on this jury retire from the court room."

There is nothing in the record from which it can be inferred that the statements in the doctors' certificates were untrue. They appear to have been made by reputable physicians, stating the condition of patients whom they were attending in a professional capacity. If the trial court had reason to believe that the statements of the physicians were untrue, it was clothed with full power to investigate the matter. It could have summoned the physicians or other witnesses and based its ruling upon the result of that investigation.

The desire of the trial court to prevent undue delay of the trial of the case is commendable. But this should not compel the court to force a litigant into trial in the absence of material witnesses, where such litigant has done all in his power to obtain their appearance and it appears with reasonable certainty that the witnesses will be available at a subsequent date. It is true that a final determination of this case had been long delayed, but this record does not show that this delay was due to any want of diligence on the part of the accused. The first prosecution was dismissed for reasons satisfactory to the Commonwealth attorney. The only previous trial before a jury had resulted in a mistrial. These results were not due to delaying tactics on the part of the accused.

There is not a scintilla of evidence in the record tending to show that the court was justified in stating that the motion for a continuance was not made in good faith. The non-judicial statement of the court, made in the presence of the veniremen who later qualified as jurors, was prejudicial to the accused. These jurors might well have inferred that the presiding judge did not think the testimony material, or, if material, that it was not entitled to credence. These jurors might have inferred also that the presiding judge was of opinion that the accused was guilty and that the motion for a continuance was simply a device to evade or postpone the trial of a guilty person.

All expressions of opinion, comments or conduct, which have a tendency to intimate to the jury the bias of the court with respect to the character or weight of the testi-

mony, particularly in criminal cases, "are watched with extreme jealousy, and generally considered as invasions of the province of the jury." *Hicks* v. *Commonwealth*, 178 Va. 261, 16 S. E. (2d) 639, 640.

In Burks Pl. & Prac. (3 Ed.) 420, it is said: "It is not the practice in Virginia to require the applicant to state what he expects to prove by the absent witness, unless the court doubts the motives of the applicant, and suspects that the object of the motion is merely to obtain delay."

The application of the rule is within the sound discretion of the trial court. However, when the disclosure of the expectant testimony is made—as it was made in this case—and the materiality of the testimony and its non-cumulative character is shown—as it was shown in this case,—failure to grant the motion constitutes reversible error. This error was aggravated by the remarks of the court in the presence of the prospective jurors.

The judgment of the trial court is reversed and the case remanded.

*Reversed and remanded.*