# Richmond

## HENNO LACKS V. COMMONWEALTH OF VIRGINIA.

January 24, 1944.

Record No. 2775.

Present, Campbell, C. J., and Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*George E. Allen* and *George E. Allen, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *M..Ray Doubles, Assistant Attorney General*, for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The accused, Henno Lacks, was convicted in the Circuit Court of Mecklenburg County on the 21st day of April, 1943, under the maiming statute, (Michie's Code 1942, sec. 4402), and his punishment fixed at five years in the penitentiary.

When the case was called for trial in the lower court the accused, by counsel, moved for a continuance upon the ground of the absence of three material witnesses, two of whom had been duly summoned. A summons had been issued for the third witness, but the officer had been unable to execute it. Bertha Lacks, one of the witnesses who had been duly summoned, sent a telegram to counsel for the accused, in which she informed him that she was sick and unable to attend the trial. Albert Lacks, the other witness who had been duly summoned, sent a doctor's certificate stating that he was suffering from influenza, that he had pulmonary tuberculosis, and that the doctor did not think it advisable for the witness to go out at that time. The doctor's certificate was not received until counsel for the accused arrived at the court house on the morning of the trial.

The court, at first, was of opinion that the accused had brought himself within the rules and was entitled to a continuance. Whereupon, the attorney for the Common-

wealth stated that a number of witnesses who had been summoned for the Commonwealth lived a long distance from the court house, and that he would like to try the case on that day. He suggested that counsel make an effort to agree on statements in writing disclosing what the witnesses would testify if they were present. Counsel for the accused objected to this procedure upon the ground that the three absent witnesses would testify to material facts, and that without them he could not fairly present his client's case to the jury.

The court, however, over the objection of counsel for the accused, required him to write out statements of what the three witnesses would have testified if they had been present, and to turn these statements over to the attorney for the Commonwealth in order that he might determine whether to agree to the statements. The statements were prepared and given to the attorney for the Commonwealth. He then discussed the contents of the statements with the other witnesses who had been summoned to testify for the Commonwealth and afterwards stated that he was willing to admit that the three witnesses, if present, would testify in accordance with the statements.

Thereupon, over the objection of the accused, the court required him to go to trial without his witnesses, and upon the written statements.

It was charged in the indictment that the accused had cut one Thomas Tune with a knife, at a dance. The written statement of what the absent witness, Albert Lacks, would have testified discloses that he, Lee Hudson, Joe Hudson, Branch Lacks, and the accused, left the Lacks home between seven and eight o'clock in the evening on the day upon which the cutting is alleged to have taken place, to attend a dance at Hatcher's store in Mecklenburg county; that they had a flat tire a few miles from home; that they did not have a spare tire and were not able to fix the tire because none of them had a knife with which to cut a patch; that Allen Roberts appeared and loaned them a knife and they patched the tire and returned the knife to him; that

they went immediately to the dance, and arrived there between 8:30 and 9:00 o'clock; that they had no trouble or argument of any kind; that there was considerable drinking going on but that the accused was not drinking; that about 11:30 they got ready to go home, and as they started out the front door he, Albert Lacks, caught a young lady by the hair and asked her how she was, and she turned on him and cursed him; that Tom Tune, the man who was cut, said "You do not have to curse him, I will get the son-of-a-bitch"; that Tom Tune then started at him (Albert Lacks) with a knife in his hand, and the accused stepped between them; that he (Albert Lacks), is crippled and not able to protect himself; that the accused grabbed Tom Tune and threw him on the floor; that Albert Lacks caught hold of the accused to prevent any further trouble, and someone jumped on the back of the accused and they went out of the door; that several persons were piling in on Tom Tune and Albert Lacks went out of the front door, and they, in company with the accused, came home; that Albert Lacks was standing by the accused the entire time and the accused did not cut Tom Tune; that the accused did not have a knife in his hands and did not have one with him that night, and Tom Tune had not been cut when Albert Lacks left, and he went out behind the accused.

The written statement regarding the witness, Bertha Lacks, of what she would have testified if present, discloses that she was in the room when Tom Tune was cut; that she did not know who cut him, but that he had not been cut prior to the time that the accused left the house; that Tom Tune stated shortly after he had been cut that he did not know who had cut him, and that the accused was not drinking that night.

Joe Hudson, the third witness, according to the written statement, would have testified substantially to the same facts to which Albert Lacks would have testified.

With these statements introduced in the evidence over the objection of counsel for the accused, the trial proceeded. At its conclusion, as previously stated, the jury found the ac-

cused guilty, and fixed his punishment at five years in the penitentiary. A motion was promptly made to set the verdict aside, but it was overruled. On the first day of May, 1943, at the same term, the accused, by counsel, renewed his motion to set aside the verdict upon the ground that the court had erroneously forced the accused into trial in the absence of his witnesses, that the accused had been required, over his objection, to write out the facts to which his absent witnesses would have testified, if present, and had been required to present these statements to the attorney for the Commonwealth in advance of the trial, and that this action of the court had resulted in a denial of a fair trial, to which he was entitled under the Constitution. This motion was likewise overruled.

The determinative question presented is whether or not the trial court erroneously refused a continuance and forced the accused into trial in the absence of the three material witnesses.

The decided cases establish the principle that a motion for a continuance is addressed to the sound discretion of the court under all the circumstances of the case. See Digest of Virginia and West Virginia Reports (Michie), Vol. 2, p. 828. This discretion, however, of trial courts must be exercised with due regard to the constitutional guaranty of a fair and impartial trial to one accused of crime, and the right to call for evidence in his favor. See Digest of Virginia and West Virginia Reports (Michie), Vol. 2, p. 829.

There is no suggestion in this case that the continuance sought was for the purpose of delay or to evade trial by any unfair tactics. The record discloses due diligence on the part of the accused and that the motion for the continuance was made in absolute good faith. This court "will review and reverse the action of an inferior court, if, in the exercise of its discretion, it has harshly or unjustly refused a continuance; and especially where there is nothing in the circumstances to warrant the conclusion that the real purpose in moving for a continuance is to delay or evade

trial and not to prepare for it." *Myers* v. *Trice*, 86 Va. 835, 11 S. E. 428.

The written statement embracing the facts to which Albert Lacks would have testified, if present, discloses that Tune had not been cut prior to the time the accused left the dance. In other words, according to this statement, Tune was cut after the accused had departed. This would tend to establish an alibi and, according to respectable authority, the rule against granting a continuance because the evidence of the absent witness would be cumulative has no application. 12 Am. Jur., Continuances, section 25. However, it is obvious from the statement that the evidence was very material and, even though cumulative to some extent, fairness to the accused demanded a continuance. The fact that the evidence is, to some extent, cumulative, *alone* is not sufficient to justify a refusal to continue a case. *Anthony* v. *Commonwealth*, 179 Va. 303, 308, 18 S. E. (2d) 897.

If the expected testimony is competent and material and not merely cumulative, and if it is credible and probably will affect the result, and will likely be obtained at a future trial, and if due diligence has been exercised to secure the attendance of the absent witness, and if the accused cannot safely go to trial without his testimony, generally a continuance will be granted. 12 Am. Jur., Continuances, section 23; Digest of Virginia and West Virginia Reports (Michie), Vol. 2, p. 836.

In *Cremeans* v. *Commonwealth*, 104 Va. 860, 52 S. E. 362, 2 L. R. A. (N. S.) 721, after stating the general rule controlling continuances because of the absence of witnesses, the court said: "While we approve the wisdom of the above-mentioned rule, and are in entire sympathy with its object, which is to prevent unnecessary delay, and promote the prompt and effective administration of the criminal law, still the wide discretion vested in trial courts in that respect must be exercised with due regard to the provisions of the Bill of Rights, which secure to one accused of crime a fair and impartial trial, and to that end safeguard his right to call for evidence in his favor."

In *Anthony* v. *Commonwealth, supra,* this court held that the certificates of two doctors, stating that the physical condition of two witnesses made it impossible for the witnesses to attend court, and the affidavit of the accused, entitled the accused to a continuance. This court, in that case, based its conclusion largely upon the authority of *Vineyard* v. *Commonwealth,* 143 Va. 546, 129 S. E. 233, where the rule is stated as follows:

"As a general rule, where a witness has been duly summoned and is absent on account of sickness or for other cause, if the party causing the witness to be summoned makes affidavit that the testimony of the witness is material, not merely cumulative, and that he cannot safely go to trial without his testimony, a continuance ought to be granted if there is reason for believing that the attendance of the witness can be secured at the next term; unless the court should be satisfied from the circumstances that the object of the motion was to delay the trial and not to prepare for it. *Hewitt* v. *Commonwealth,* 17 Gratt. (58 Va.) 629, 630; *C. & O. Railway Co.* v. *Newton,* 117 Va. 260, 263, 85 S. E. 461; *Lufty* v. *Commonwealth,* 126 Va. 711, 100 S. E. 829."

It is true no affidavit was filed in support of the motion for a continuance. However, in our view, no affidavit is required when the facts upon which the motion is based are already before the court. 12 Am. Jur., Continuances, section 30. In the case at bar the written statements containing the facts to which the absent witnesses would have testified, were already before the court. The importance and materiality of their testimony is perfectly apparent from the statements. No affidavit was required to make plain that which already was plain to the court.

The Attorney General makes comment upon the condition of the record. It does not contain the evidence given at the trial nor the other incidents of trial. We do not think it was necessary to bring a complete record of the trial upon this review of the adverse ruling of the trial court on the motion for a continuance. Purely a legal question

is now being presented, and it can be properly determined upon the record we now have. It clearly discloses the question involved, the ruling of the trial court, and the certificate of the trial judge. From it there is sufficient for this court to decide the sole legal question, namely, Was the accused entitled to a continuance? We think he was and, therefore, reverse the judgment of the trial court and remand the case for a new trial.

*Reversed and remanded.*