## Richmond

COMMONWEALTH OF VIRGINIA V. PORTSMOUTH GAS COMPANY.

September 1, 1972.

Record No. 7947.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Henry M. Massie, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for appellant.

*James O. Watts, Jr.,* for appellee.

COCHRAN, J., delivered the opinion of the court.

On November 23, 1971, Portsmouth Gas Company, a gas distribution corporation serving the Portsmouth area, filed an application with the State Corporation Commission for an increase in its gas rates to produce $705,912 in additional annual gross revenue. A public hearing on the proposed increase was held on January 7, 1972, in which the Company, the Commission staff and the Attorney General participated. On January 10, 1972, the Commission entered a final order authorizing rate increases to produce about $580,000 in additional gross revenue and directing the Company to file revised rate schedules effective February 1, 1972, from which the Commonwealth has appealed.

The sole assignment of error is that the action of the Commission is unsupported by evidence.

The Company, a wholly owned subsidiary of Commonwealth Gas Corporation, presented the prepared testimony of its chief financial officer, Robert W. Johnson, with exhibits giving financial data supporting the request for a 13.3% increase in rates to produce a rate of return on its rate base of 8.26%. The Commission staff presented the testimony of Edward Vassar, a Senior Public Utility Accountant on the staff, with an exhibit reflecting the results of his examination of the Company books. Johnson and Vassar were the only witnesses in the case.

At the outset of the hearing counsel for the Company accepted Vassar's adjustments except for additional net expense items of the Company aggregating $13,000 which, without objection, were verified. Thus it was agreed, and the Commission so found, that the Company's rate base was $7,325,583, that its adjusted net annual earnings for the test period of one year ending October 31, 1971, were $304,700 and that its actual rate of return on rate base was 4.34%[1]. As Vassar's adjustments showed that the additional revenue of $705,-912 sought by the Company would result in a rate of return of 8.96%, counsel for the Company requested that the additional revenue sought be reduced to about $600,000 to bring the rate of return to 8.26%.

At this time the Attorney General noted that there was no "cost of money witness". He asked the Commission to hear the evidence to be presented at the hearing but to withhold its decision until "such time more complete rate of return testimony can be submitted and examined by an expert for the Commission . . . ".

Johnson, who was admittedly not an expert on cost of money or rate of return, testified that he knew what it was necessary for the Company to earn "in order to remain in a healthy financial condition and to finance its necessary expansion . . .", and that the increase sought by the Company was required. He stated that the 8.26% rate of return on rate base was approximately the same rate which the Commission had approved in its most recent case involving a gas company. He testified to the effects on the Company's financial structure of a proposed $1,500,000 bond issue at an interest rate of 8%, designed to refinance $1,425,000 in short term bank loans. At

---

[1] The actual rate of return was in fact less than 4.34%, for this rate was based on adjusted net annual earnings for the test period of $317,699, rather than the $304,700 agreed to by the Company and the Commission staff and approved by the Commission.

the hearing Johnson further testified that the Company had found, since the date of his prepared testimony, that it must pay interest at the rate of 8.125% on the $1,500,000 bond issue. So the actual cost of debt capital was established.

Johnson was unable to answer questions asked on cross-examination about certain discrepancies in his exhibits, particularly those relating to embedded interest costs and the unusually high mortgage requirement of net earnings coverage of interest and depreciation[2]. However, his testimony was uncontradicted that an 8.26% rate of return on rate base which would produce a 10.7% return on equity was necessary and that neither rate would be excessive. The Attorney General contends that this evidence is insufficient, and that an expert witness should have been required to testify as to the proper rate of return, especially as to the proper rate of return on equity. We do not agree.

In a rate case the Commission must determine rate base, annual gross revenues and annual operating expenses. *Norfolk* v. *Chesapeake and Potomac Telephone Co. of Virginia*, 192 Va. 292, 301, 64 S.E.2d 772, 777 (1951). *See Commonwealth* v. *VEPCO*, 211 Va. 758, 760, 180 S.E.2d 675, 677-78 (1971). Here, these basic findings were made by the Commission and, indeed, were established by uncontradicted evidence.

As a final step in the process of decision, the Commission must set the rate of return on rate base at such a figure as will afford the utility reasonable opportunity to earn a fair return on its investment. *Norfolk* v. *Chesapeake and Potomac Telephone Co. of Virginia, supra* at 301-02, 64 S.E.2d at 777-78.

In fixing the rate of return, the Commission acts as an expert tribunal exercising a legislative function, whose decision must be regarded as prima facie just, reasonable and correct. *Board of Supervisors of Arlington County* v. *VEPCO*, 196 Va. 1102, 1109-10, 87 S.E.2d 139, 144 (1955). Its decision must be supported by facts, but expert opinion on the ultimate question for decision is not such a fact and is not controlling. *Chesapeake and Potomac Telephone Co. of Virginia* v. *Commonwealth*, 147 Va. 43, 53-54, 136 S.E. 575, 577 (1927). The Commission must weigh the evidence but is vested with a fair discretion to determine the rate, which is the ultimate fact in issue. *Id.* at 51, 136 S.E. at 576-77.

---

[2] The mortgage required that net earnings for interest and depreciation be at least 4.25 times bond interest and that net earnings for interest be at least 2.25 times bond interest.

The Company concedes that, even if the rate of return set by the Commission is fair and reasonable, it must be based on evidence. It contends that such evidence need not consist of expert testimony, but that the Commission could make its determination from the evidence in this record. In effect, the Company is asking that the Commission apply its knowledge of cost of capital and fair rate of return on equity, obtained from other sources, to the facts in this case.

It is true that in every major rate case experts are called to testify for the utility, for intervenors and, frequently, for the Commission staff. Certainly any utility, however small, runs the risk of non-persuasion if it does not present expert testimony in support of its application. Usually the jurisdictional rate base and the net annual earnings during the prescribed test period are contested, as well as the ultimate question of fair return on rate base which, of course, requires a consideration of cost of debt and cost of attracting equity capital. Under such circumstances expert testimony is a practical necessity. But where, as here, the basic facts are not controverted expert testimony, while desirable, is not mandatory.

The Commission in its opinion found that, after issuance of the $1,500,000 in bonds at an interest rate of 8.125%, the 8.26% rate of return on rate base requested by the Company would result in a 10.72% return on equity, which would be reasonable except that the Company has a low debt ratio of about 40%. In light of this factor, which, as it pointed out, works to the disadvantage of consumers but makes the common stock less risky, the Commission found that a 10% return on equity was fair and adequate. Accordingly, it allowed additional gross revenue of $580,780 to yield an additional net income of $289,229, or a rate of return of about 8.11% on rate base. In commenting on the Commonwealth's objection that the rate of return on equity was not supported by expert testimony, the Commission noted that this rate was lower than that granted in any other utility rate case recently considered by the Commission, specifically referring to four cases.

The Company, relying on rates of return approved by the Commission in its prior recent decisions, introduced a bare minimum of evidence. The Commission, by reference to these decisions, established a zone of reasonableness within which to exercise its judgment. See Commonwealth v. VEPCO, supra at 769, 180 S.E.2d at 683-84. It then allowed a relatively low rate of return on equity which, however, has not been challenged by the Company.

We conclude that the evidence, while weak, is sufficient and that, as the result reached by the Commission was not unfair or unreasonable, it should not be disturbed by us. *See Roanoke Water Works Co.* v. *Commonwealth,* 137 Va. 348, 376, 119 S.E. 268, 276 (1923).

*Affirmed.*