## Richmond

OLD DOMINION POWER COMPANY, INC., OF VIRGINIA

V.

STATE CORPORATION COMMISSION

Record No. 840749.

November 30, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson and Russell, JJ., and Gordon, Retired Justice.

*John W. Riely (Patricia M. Schwarzschild; Hunton & Williams*, on briefs), for appellant.
*Kenworth E. Lion, Jr. (Lewis S. Minter*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

Old Dominion Power Company, Inc., of Virginia filed a general rate application with the State Corporation Commission on May 23, 1983, requesting an increase to 16% in its authorized return on equity. It also requested approval of a purchased power expense clause which would permit Old Dominion automatically to pass on to its customers any future increases in its cost for wholesale purchases of power. The Commission, by final order entered on February 9, 1984, adopted 14.5% as a proper return on equity for fixing rates and denied Old Dominion's request for an automatic adjustment clause. We affirm the Commission's order.

Old Dominion is a wholly owned subsidiary of Kentucky Utilities Company. Kentucky Utilities is a large electric utility serving substantial areas of Kentucky. Old Dominion is a relatively small

part of the Kentucky Utilities system, serving five counties in southwestern Virginia. Old Dominion has no generating facilities of its own and purchases all its power from Kentucky Utilities at rates set by the Federal Energy Regulatory Commission (FERC).

The officers of Old Dominion and Kentucky Utilities are the same individuals. In July 1982, these officers sought and obtained from FERC an increase in the wholesale rates charged by Kentucky Utilities to Old Dominion. Ten months later, these officers, on behalf of Old Dominion, made a general rate application to the Commission, pointing out that Old Dominion's increased cost of wholesale power had already amounted to $900,000 and that it had suffered a net loss in 1982. The Commission promptly granted an interim rate increase, subject to refund, to cover Old Dominion's increased power costs; however, after hearing the evidence, the Commission disagreed with Old Dominion's calculation of a fair and reasonable return on equity and denied its request for an automatic adjustment clause.

When Old Dominion filed this rate application, it was operating under a 15.0%-15.5% return on equity authorized by the Commission in a previous rate case. The 14.5% rate authorized in this case, therefore, constituted a reduction. Old Dominion offered an expert witness who testified that a 16% return would be appropriate. An expert witness for protesting parties recommended a range of 12.51% to 13.45%. An expert witness for the Commission staff recommended a range of 14.5% to 15.5%, but added "the data appears to support a return in the lower end rather than the higher end of that range." All three witnesses relied on the generally accepted discounted cash flow methodology. The staff witness, whose reasoning was accepted by the Commission, supported her proposed reduction in the rate of return by reference to substantial decreases in interest rates and in the rate of inflation since Old Dominion's previous rate case, coupled with indications of a strong economic recovery since that time.*

---

\* These changes had produced much higher prices for utility common stocks and lower yields on long-term utility bonds. Therefore, the argument runs, a potential investor, comparing an investment in the equity of a utility with competing investments, would now be confronted with a higher cost in relation to the current and anticipated dividend yield. He must, therefore, expect a lower rate of return on an equity investment in a utility than he could have expected at the time of Old Dominion's previous rate case, which was decided during a period of higher interest rates, higher inflation, and lower stock prices. Such reduced expectations are reflected in a lower market cost of equity capital for the utility, and justify a lower authorized rate of return by the Commission.

 The standards of review which we apply on appeal are well settled. The Commission is an expert tribunal which exercises a legislative function in fixing rates, under powers delegated to it by the General Assembly. That delegation includes a reasonable amount of discretion. *Central Tel. Co. of Va. v. Corp. Comm.*, 219 Va. 863, 874, 252 S.E.2d 575, 581 (1979). It is the duty of the Commission to set rates which are reasonable and fair both to the public and to the utility. A major component in the ratemaking process is the decision as to a reasonable return on equity — a return which will afford the utility a reasonable opportunity to earn a fair return on its investment. *Norfolk v. Chesapeake, etc., Tel. Co.*, 192 Va. 292, 312, 64 S.E.2d 772, 782 (1951). The Commission's decision as to a fair and reasonable return on equity is entitled to the same strong presumption of correctness as are other legislative decisions. *Commonwealth v. Portsmouth*, 213 Va. 239, 241, 191 S.E.2d 220, 222 (1972). The decision will not be set aside as unfair or unjust unless there appears a clear abuse of legislative discretion. *Appalachian Pow. Co. v. Commonwealth*, 216 Va. 617, 626, 221 S.E.2d 872, 878 (1976); *Commonwealth v. VEPCO*, 211 Va. 758, 767, 180 S.E.2d 675, 683-84 (1971); *Board of Supervisors v. VEPCO*, 196 Va. 1102, 1109-10, 87 S.E.2d 139, 144 (1955).

 The reasoning, methodology, and factual analysis relied on by the Commission were well supported by the record and were not subjected to substantial challenge before the Commission. We find no abuse of discretion in the Commission's determination of a fair and reasonable return on equity.

 Old Dominion concedes that the decision whether to grant it an automatic adjustment clause, covering future changes in the price its parent charges it for purchased power, falls within the Commission's discretion. Old Dominion argues on appeal, however, that the Commission, in denying it such a clause, "arbitrarily distinguishes or classifies Old Dominion from other utilities that are similarly situated so as to deny it the equal protection of law guaranteed by the United States Constitution." This is so, Old Dominion says, because the Commission has approved such clauses in the cases of consumer-owned rural electric cooperatives and investor-owned gas distribution utilities.

The Commission responds that rural electric cooperatives are properly distinguished from investor-owned electric utilities like Old Dominion by the mere fact that the customers of such a coop-

erative are also its owners. If, through some error, its customers are overcharged for power, the benefit of the overcharge, until it is corrected, will accrue to those who paid it. A contrary result would occur if Old Dominion should overcharge its customers.

The Commission also distinguishes the cases of gas distribution utilities by reference to the relative volatility of the wellhead price of natural gas. That price, the Commission says, has historically been subject to frequent fluctuations, now changes monthly, and may be expected to vary even more frequently after January 1, 1985, when it will become entirely deregulated under federal law. Automatic adjustment clauses, as to such volatile costs, are useful to avoid a multiplicity of rate cases. The Commission concedes that the use of such a clause is an appropriate exercise of its discretion to cover rapidly changing costs of which a utility can have no advance knowledge and over which it can exercise no control. *See Norfolk* v. *Virginia Electric, Etc., Co.*, 197 Va. 505, 90 S.E.2d 140 (1955).

The Commission points out that Old Dominion's purchased power cost is entirely unlike the wellhead price of gas. The wholesale price of electric power distributed interstate is regulated by the FERC. All interested parties are entitled to notice and have an opportunity to be heard in connection with changes in its price. Thus, such changes can be anticipated by the utility and made the basis for a rate application to the Commission. An automatic adjustment clause, the Commission argues, would be particularly inappropriate in the case of Old Dominion, whose officers can, and did in this case, not only anticipate an increase in the wholesale cost of power, but assist in causing it by requesting it from the federal authorities. We agree that it would be most unsound policy to permit a utility to pass on to its customers, without review by the Commission, a cost increase which lies, to any extent, within its control.

While conceding that automatic adjustment clauses are useful in the unusual circumstances mentioned above, the Commission makes a number of strong policy arguments against their indiscriminate use. Such clauses, the Commission says, circumvent the Commission's ability to regulate utility rates in the public interest; they deprive the Commission of an opportunity to weigh such offsets as increased revenues, savings from greater efficiency, and other costs which have declined; they destroy an incentive to achieve increased fuel efficiency; they remove a retailer's incentive

to intervene in its supplier's rate requests before the FERC; they shift the burden of proof of unreasonableness to the consumer; they disrupt the stability of published rates upon which industries and other consumers must base their plans; they may so bias the selection of fuels and production methods as to cause a utility to select those methods which will entitle it to pass on to its customers the largest possible share of its costs, rather than those methods which are most economical. *See Utility Consumers' Council of Mo., Inc.* v. *Pub. Service Comm'n. of Mo.*, 585 S.W.2d 41, 49-50 (Mo. 1979). We agree with the Commission's view that such clauses should be permitted only in exceptional circumstances, and with great caution, after carefully weighing the expected benefits against their disadvantages, in light of the public interest.

As noted above, the decisions of the Commission, in rate cases, are exercises of delegated legislative powers. Unless they involve such "suspect classifications" as race, sex, or religion, or affect fundamental constitutional rights such as freedom of speech, legislative classifications will be upheld if they bear some rational relationship to a legitimate interest or purpose. Such a classification ordinarily will be upheld "if any state of facts can be reasonably conceived that would support it." *Mahan* v. NCPAC, 227 Va. 330, 336, 315 S.E.2d 829, 832 (1984) (quoting *Blue Cross* v. *Commonwealth*, 221 Va. 349, 363, 269 S.E.2d 827, 836 (1980)). For the reasons stated above, the Commission's determination to treat Old Dominion differently, with respect to the automatic adjustment clause, from rural electric cooperatives or gas distribution utilities, bears a rational relationship to a legitimate legislative interest. Moreover, Old Dominion is not treated differently from other utilities similarly situated. The Commission has not granted automatic adjustment clauses to any other investor-owned electric utilities. Accordingly, the Commission's determination did not deny Old Dominion the equal protection of the laws and did not constitute an abuse of discretion.

The order appealed from will be

*Affirmed.*