GTE SPRINT COMMUNICATIONS CORPORATION OF
VIRGINIA

v.

AT&T COMMUNICATIONS OF VIRGINIA, INC., ET AL.

Record No. 841881

MCI TELECOMMUNICATIONS CORPORATION OF VIRGINIA

v.

AT&T COMMUNICATIONS OF VIRGINIA, INC., ET AL.

Record No. 841882

November 27, 1985

Present: All the Justices

*Steven H. Reisburg (James E. Magee; Deborah A. Dupont; Rita A. Barmann; Ernest C. Vaughan; Reboul, MacMurray, Hewitt, Maynard & Kristol; Randolph, Boyd, Cherry & Vaughan,* on briefs), for appellant. (Record No. 841881.)

*Michael J. Morrissey; Warner F. Brundage, Jr.; Robert M. Gillespie (Glenn A. Stover; Wilma R. McCarey; Thomas R. Phillips; Mark J. Mathis; Lewis S. Minter; Gerald L. Baliles, Attorney General; Anthony Gambardella, Assistant Attorney General; John W. Riely; Richard D. Gary; Hunton & Williams,* on briefs), for appellees. (Record No. 841881.)

*William F. Marmon, Jr. (Hullihen Williams Moore; Robert Alfred Gouldin; Louis R. Monacell, Christian, Barton, Epps, Brent & Chappell,* on briefs), for appellant. (Record No. 841882.)

*Michael J. Morrissey; Warner F. Brundage, Jr.; Robert M. Gillespie (Glenn A. Stover; Wilma R. McCarey; Thomas R. Phillips; Mark J. Mathis; Lewis S. Minter; Gerald L. Baliles, Attorney General, Anthony Gambardella, Assistant Attorney General; John W. Riely; Richard D. Gary; Hunton & Williams,* on briefs), for appellees. (Record No. 841882.)

COCHRAN, J., delivered the opinion of the Court.

GTE Sprint Communications Corporation of Virginia (GTE Sprint) and MCI Telecommunications Corporation of Virginia (MCI) filed separate appeals of right, each challenging the same provisions of the final order of the State Corporation Commission (the Commission) entered on August 22, 1984. MCI and GTE Sprint contend that the Commission erred in requiring them to compensate local telephone exchange companies in accordance with a plan approved by the Commission and in authorizing AT&T Communications of Virginia, Inc. (AT&T of Va.), to set its rates competitively throughout Virginia.

The Commission defends the final order in its entirety. Each of the other appellees, The Chesapeake and Potomac Telephone Company of Virginia (C&P), AT&T of Va., The Virginia Exchange Carrier Association, and the Division of Consumer Counsel, Office of the Attorney General, defends the challenged provision that affects its interest.

In 1974, the United States filed an antitrust action seeking to break up the Bell System, a nationwide telecommunications system comprised of American Telephone and Telegraph Company

(AT&T) and its subsidiaries, Western Electric Company, Inc., Bell Telephone Laboratories, Inc., and 22 Bell operating companies. In August 1982, the United States District Court for the District of Columbia entered a modification of final judgment based on a settlement agreement reached by AT&T and the Justice Department. *United States* v. *American Tel. and Tel. Co.,* 552 F. Supp. 131, 226-32 (D.D.C. 1982), *aff'd sub nom. Maryland* v. *United States,* 460 U.S. 1001 (1983).[1]

Under the district court order, the Bell operating companies, including C&P, were divested from AT&T and reorganized into seven regional holding companies. *Id.* at 142 n.42, 160-70, 226-27. By subsequent order, each operating company was divided into local access and transport areas (LATAs). *See United States* v. *Western Elec. Co., Inc.,* 569 F. Supp. 990 (D.D.C. 1983).[2] The operating companies were forced to relinquish to AT&T their right to carry long distance traffic between LATAs but were granted the right, denied to AT&T, to transport communications which originate and terminate within a single LATA (intraLATA traffic). Only AT&T and its competitors, the other common carriers such as MCI and GTE Sprint, were permitted to provide service between LATAs (interLATA traffic). *Western Elec.,* 569 F. Supp. at 994; *American Tel.,* 552 F. Supp. at 141. Thus, following the court-ordered reorganization, long distance service is now divided into three categories: interstate service, regulated by the federal government; intrastate interLATA service, regulated by the states; and intrastate intraLATA service, regulated by the states.

The divestiture order also required the operating companies to provide access services to the other carriers "equal in type, quality, and price" to the access services provided AT&T. Provision of "equal access" as required by this order is being phased in gradually and is to be substantially complete by September 1, 1986. *American Tel.,* 552 F. Supp. at 196-200, 227, 232-34. In the interim, however, where AT&T receives access services superior to

---

[1] This suit was the second antitrust action by the government against these companies. The first action, filed in 1949, resulted in entry of a consent decree in 1956 which was ineffectual in redressing the anticompetitive activity alleged. *See American Tel.,* 552 F. Supp. at 135-43 (history of AT&T litigation). The first action was later transferred to the District of Columbia court and consolidated with the second AT&T action.

[2] C&P was divided into five LATAs. 569 F. Supp. at 1027-28.

those of the other carriers,[3] the operating companies are required to charge lower access fees for the inferior access provided to other carriers. *Id.* at 199 & nn.286-88.

Prior to 1984, Virginia prohibited competition for intrastate telephone service.[4] Code § 56-265.4 (Repl. Vol. 1981); *see Western Elec.*, 569 F. Supp. at 1005 n.71, 1027 n.190. In response to the divestiture, however, the General Assembly amended the Virginia law, effective July 1, 1984, to allow competition between companies providing intrastate long distance service. First, the General Assembly removed the statutory ban on competition, allowing certification of competing telephone companies to provide interLATA service where the Commission finds such certification is in the public interest. Code §§ 56-265.4, -265.4:4.B (Supp. 1985).[5] The Commission may impose conditions and limitations on a carrier's certification. Code § 56-265.4:4.B (Supp. 1985). Second, the General Assembly authorized the Commission to loosen its regulatory control over rates of interLATA long distance providers where the Commission determines that the interLATA service "will be provided on a competitive basis." Code § 56-481.1 (Supp. 1985).[6]

To implement these statutory changes, the Commission adopted rules governing applications for certification and setting of rates of interLATA carriers. *See InterLATA Interexchange Telecommunications Carriers*, 60 Pub. Util. Rep. 4th (PUR) 327, 330-32

---

[3] For example, long distance calls are made through AT&T by dialing 11 digits, but calls placed through the other carriers prior to provision of equal access require dialing 22 or more digits, creating a substantial inconvenience for the customer. 552 F. Supp. at 197.

[4] No public utility can be authorized to provide service without a certificate of public convenience and necessity. Code § 56-265.3. Prior to amendments effective in 1984, no certificate was issued to an applicant seeking to provide service in any territory adequately served by another certificate holder. *See* Code § 56-265.4 (Repl. Vol. 1981).

[5] IntraLATA competition, however, is expressly prohibited until January 1, 1986. Code § 56-265.4:4.B (Supp. 1985).

[6] The amended statute provides that, in determining whether service will be provided on a competitive basis,

> the Commission may consider (i) the number of companies providing the service; (ii) the geographic availability of the service from other companies; (iii) the quality of service available from other companies; and (iv) any other factors the Commission considers relevant to the public interest.

Code § 56-481.1 (Supp. 1985). The Commission, however, has determined that consideration of these factors is mandatory upon review of any application for competitive rate authorization. *See InterLATA Interexchange Telecommunications Carriers*, 60 Pub. Util. Rep. 4th (PUR) 327, 332 (Va. S.C.C. 1984) (Rule 9).

(Va. S.C.C. 1984). In the rulemaking proceeding, the Commission invited and received written comments from interested persons and reply comments from the Commission's staff; argument was heard at a public hearing. *Id.* at 327-28.

On July 2, 1984, MCI applied for a certificate of convenience and necessity to provide interLATA telephone service and sought authority to set its rates competitively under the relaxed provisions of Code § 56-481.1. Because MCI requested expedited treatment, the Commission scheduled a hearing on July 27. On July 5, AT&T of Va. also petitioned for flexible regulation under the provision allowing competitive rate setting; a separate hearing was set in this matter for July 27.[7] Three other carriers applied for certificates and competitive rate authorization, and their applications were consolidated for hearing with the MCI case.[8] On July 23, GTE Sprint also applied for certification and competitive rate treatment on an expedited basis. Although this filing was late, the Commission accepted GTE Sprint's application and set it for hearing with the other certification applications.

The Commission denied motions of C&P, MCI, and the Division of Consumer Counsel, Office of the Attorney General, to suspend or continue hearings on these various applications. After considering evidence presented at the hearing and testimony filed before and after the hearing, the Commission in its final order approved all five applications for certificates and all six requests to base rates on competitive factors.

### I. Interim Compensation Plan.

Code § 56-265.4:4 left intact until January 1, 1986, the exclusive right of local telephone companies to offer intraLATA long distance service. MCI, GTE Sprint, and certain other carriers, however, unlike AT&T of Va., currently use equipment and technology which cannot prevent all intraLATA calls from being placed on their networks. In order to protect the rights of local companies to carry intraLATA traffic while authorizing compet-

---

[7] The Commission granted AT&T of Va. a certificate of convenience and necessity on January 1, 1984, the effective date of the divestiture ordered by the federal court.

[8] United States Transmission Systems, Inc., and TDX Systems, Inc., filed applications on July 3 and 6, respectively. On July 20, SouthernTel of Virginia, Inc., amended its application previously filed.

ing interLATA carriers to provide service in Virginia, the Commission adopted Rule 2, which states:

Interexchange carriers will not be permitted to offer intraLATA calling at this time. Incidental intraLATA calls that occur shall either be blocked, or the local exchange companies shall be compensated for revenues lost as a result of such incidental intraLATA calls. The certificate application of each interexchange carrier shall include its plan for either blocking or paying for such incidental calling.

60 Pub. Util. Rep. 4th (PUR) at 331. In their applications, MCI and GTE Sprint both agreed to comply with Code § 56-265.4:4.B and the Commission's rules requiring that they not offer intraLATA service before 1986. Both asserted that they were unable to block all intraLATA calls placed through their systems and proposed to compensate the local telephone companies for incidental intraLATA calls by payment of access charges.

C&P protested and sought a continuance, alleging that MCI and GTE Sprint had failed to comply with the requirement of Rule 2 to propose a plan for blocking or paying. The Commission denied the requested continuance and heard evidence on the applications; it instructed the parties to confer with the Commission staff to formulate, as a condition to certification, a method of compensating the local companies for their revenues lost on unauthorized intraLATA calls. Although two conferences were held, no complete resolution of this issue was reached; therefore, the Commission developed and adopted an interim plan of compensation, issued certificates to MCI and GTE Sprint, and ordered them to comply with the plan.[9]

Appellants contend the compensation plan violated Virginia law because the Commission was without authority to require such payments. MCI says that, if the payments ordered are neither rates nor fines, they must be damages, which the Commission is not authorized to award. We find this argument unpersuasive.

---

[9] Under the interim compensation plan, a gross compensation amount is based on the carrier's average monthly intraLATA calling volume and the local company's average billed revenue per minute of use. The gross figure is reduced by the amount of access charges paid by the carrier attributable to intraLATA calls and the local company's percentage of uncollectible billed revenue. The plan provides a method of verifying the figures furnished by each company. It also establishes the procedure by which a party or the Commission's staff may seek changes in the plan.

Code § 56-35 grants the Commission the following regulatory authority over telephone companies operating in Virginia:

> The Commission shall have the power, and be charged with the duty, of supervising, regulating and controlling all public service companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses therein by such companies.

The Commission has broad discretion to determine if a certificate of public convenience and necessity should be granted under Code § 56-265.3. *See Stafford Corps. v. Corp. Comm.,* 220 Va. 559, 562, 260 S.E.2d 226, 228 (1979). The Commission may grant certificates to companies for interLATA service where it finds such action is in the public interest. Code § 56-265.4:4.B. It is expressly authorized to prescribe terms, conditions, limitations, and restrictions on certificates granted to such telephone carriers. *Id.*

■ The Commission adopted Rule 2 and the compensation plan to insure that companies granted certificates to provide interLATA service do not encroach upon the intraLATA market reserved to the local telephone companies. The record demonstrates that the Commission intended certification of MCI and GTE Sprint to be contingent on their compliance with the plan of compensation, and so informed these applicants. The payment requirement was a reasonable condition imposed to protect local companies from loss of revenues when unauthorized intraLATA calls are not blocked but are carried over the networks of interLATA carriers. We hold that the Commission did not abuse its discretion in imposing this condition.

■ Appellants also argue that the plan was improperly adopted before they were afforded notice and an opportunity to be heard. They rely on *VEPCO v. State Corp. Comm.,* 226 Va. 541, 548-49, 312 S.E.2d 25, 29-30 (1984), where we held that summary disposition of a ratemaking case failed to meet the requirements of due process. In that case, Vepco filed an application for a two-step rate increase, the second step of which included recovery of its investment in a cancelled nuclear unit. With its application, Vepco filed supporting testimony and exhibits. The Commission severed the cancellation issue for further investigation. It summarily disposed of the remainder of Vepco's application, refusing both

stages of the requested rate increase. *Id.* at 543-45, 312 S.E.2d at 26-27.

We reversed the Commission's denial of these proposed increases, finding that summary disposition violated Vepco's due process rights. *Id.* at 548-49, 312 S.E.2d at 29-30. We noted that the order was entered only three weeks after Vepco filed its application. Vepco had no notice that summary action was contemplated and was given no opportunity to be heard. *Id.* at 548, 312 S.E.2d at 29. Additionally, we held that an *ex post facto* hearing failed to satisfy Vepco's right to an opportunity to be heard. *Id.*, 312 S.E.2d at 30.

That ratemaking case, however, is distinguishable from the applications of MCI and GTE Sprint for certification. Vepco had no notice that its requests were challenged; these applicants knew C&P challenged the adequacy of the plans proposed by their applications. Vepco had no opportunity to address the Commission; MCI filed a written response to C&P's protest and motion for a continuance, and both applicants appeared at the July 27 hearing, where they had an opportunity to argue before the Commission that access charges are an adequate means of compensation under Rule 2.

At the hearing, the Commission informed MCI and GTE Sprint that access charges are insufficient to achieve the purpose of Rule 2 that the local companies be "made whole" for revenues lost on unblocked incidental intraLATA calls. Both applicants agreed to participate in informal proceedings with the Commission's staff in an effort to reach an agreement. Both promised to pay lost revenues. Neither asked for a hearing. Expressing concern that the certification decision should be based on a plan determined by the Commission rather than by C&P, they were given such assurances by the Commission.

When negotiations failed to yield an agreement, neither applicant requested a hearing. The Commission could have withheld approval of certification of MCI and GTE Sprint until they submitted an acceptable compensation plan. Knowing that these applicants faced a critical deadline of September 1 for participating, as certificated carriers, in equal access conversion in the Norfolk area, the Commission fashioned its own temporary plan so that certification could be approved before the deadline. When the Commission approved a formula, neither MCI nor GTE Sprint asked for a hearing. After receiving certification, both challenged

the plan, again arguing that access charges are appropriate compensation under Rule 2. Only at this stage, however, did one of the appellants allege a denial of due process.

At no point in these proceedings did either applicant object to the procedure followed by the Commission. Nor did either party object to the Commission's use of its staff for negotiation of a plan. They cannot now be heard to complain of a procedure in which they acquiesced.

As the Commission notes, hearing on the compensation plan has not been denied but has merely been deferred. The Commission order allowed for future hearings at the request of any interested party to have the plan altered. At such hearings, MCI or GTE Sprint may present evidence to demonstrate that the interim plan is an ineffective means of compensating local companies for unauthorized intraLATA calls and the Commission may modify the plan accordingly. Under the facts of this case, therefore, we hold that this opportunity to seek modification of the plan adequately affords MCI and GTE Sprint their due process rights.

■ GTE Sprint asserts that the Commission's action was arbitrary and capricious because the plan was not supported by the evidence. We disagree. When these applicants failed to devise an acceptable method of compensation through their own efforts, the Commission drafted and adopted the plan as an interim measure to facilitate the expedited certification so eagerly sought by MCI and GTE Sprint. They may present evidence in a future proceeding to support their contention that the plan should be changed because it overcompensates the local companies for losses resulting from incidental unauthorized intraLATA calls.

■ GTE Sprint also argues that C&P unfairly benefits from its former participation in the Bell System's anticompetitive activity, saying the plan compensates C&P for a condition caused by the nature of AT&T's telecommunications network and its attempted exclusion of other carriers prior to the divestiture. While it is true that the access initially provided to other carriers is inferior to that available to AT&T of Va., this difference is an incident of the divestiture and is not a violation of the federal court orders in the antitrust action. *See American Tel.*, 552 F. Supp. at 196-200.[10] Furthermore, any attempt to prevent C&P from benefitting

---

[10] In an order approving aspects of the AT&T plan of reorganization, the divestiture court defined equal access as "access whose 'overall quality in a particular area is equal within a reasonable range which is applicable to all carriers,'" rejecting a requirement of

from this circumstance would result in a windfall to MCI and GTE Sprint, allowing them to profit from incidental intraLATA calls while they are not authorized to offer intraLATA service. Rule 2, to which MCI and GTE Sprint did not object, was designed to prevent this unjustified result.

■ Nor do we find merit in appellants' contention that the plan unfairly discriminated against MCI and GTE Sprint in violation of the federal Constitution and Code § 56-481.1 by requiring them to make payments not required of AT&T of Va. The block-or-pay rule is applied to all carriers seeking certification under Code § 56-265.4:4. Certain carriers seeking certification affirmed that they would comply with Rule 2 by blocking intraLATA calls made on their networks. AT&T of Va. blocks such calls. It is likewise within the ability of MCI and GTE Sprint to block intraLATA calls by technology available since 1982. The necessity of compensation results only from their business decision not to incur the expense required to acquire a mechanism for blocking intraLATA calls.[11] To make the local companies whole by means of access charges would unfairly require carriers which are successfully blocking intraLATA calls to bear part of the financial burden resulting from the failure of MCI and GTE Sprint to block.

■ There is no merit in the contention of MCI and GTE Sprint that the interim compensation plan violates the provisions of the modification of final judgment (MFJ) and subsequent orders in the AT&T divestiture case. These orders require that the divested operating companies provide equal access to the other carriers and assess all access charges in the form of cost-justified tariffs. MCI and GTE Sprint challenge the plan's formula for payments that are not cost-justified and the plan's exclusion of the payments from the local companies' tariffs. They also assert that the plan violates the equal access requirement by forcing them to pay additional fees for access inferior to that afforded AT&T of Va.

"absolute technical equality" in areas such as transmission quality and blocking ability. *United States* v. *Western Elec. Co., Inc.*, 569 F. Supp. 1057, 1063 (D.D.C. 1983). The court noted that to require absolute technical equality "would necessitate substantial dismantling and reconstruction of local telephone networks without any real benefits either to the consuming public or to AT&T's intercity competitors." *Id.*

[11] The Commission, however, did not permit cross-examination to inquire into this decision because of the payment alternative made available under Rule 2.

These contentions ignore the fact that the charges imposed by the plan are not access charges. As the Commission noted, access charges cannot compensate for lost revenues. The compensation plan establishes another means of making reimbursement for losses occasioned by unauthorized intraLATA usage. Nothing in the MFJ or subsequent related orders requires the local companies to assess access charges for service which is not authorized under state law.

Moreover, intrastate telephone service is exclusively under the jurisdiction of state regulatory agencies. *American Tel.,* 552 F. Supp. at 159 n.117, 169 & n.161; *Western Elec.,* 569 F. Supp. at 1005; *see United States* v. *Western Elec. Co., Inc.,* 569 F. Supp. 1057, 1109 (D.D.C. 1983).

We hold that the. Commission properly imposed the interim compensation plan. Accordingly, we will affirm the Commission's certification of MCI and GTE Sprint, conditioned upon their compliance with the terms of the plan.

## II.   The Competitive Rate Authorization of AT&T of Va.

· AT&T of Va. filed its petition under Code § 56-481.1 (Supp. 1985) for authority to set its rates competitively. The Commission conducted a hearing on this petition at the conclusion of the hearing on the applications of MCI, GTE Sprint, and others for certificates of public convenience and necessity, considering the criteria of Code § 56-481.1.

MCI moved to continue the hearing on the application of AT&T of Va. The Commission denied the motion on July 20 and again on July 27. MCI never requested permission to file at a later date testimony of witnesses; GTE Sprint did so file, with permission of the Commission, the testimony of two witnesses. On appeal, MCI and GTE Sprint first contend that they were denied procedural due process because the hearing was held too soon to enable them to make adequate preparation. We disagree.

The granting or denial of a motion for continuance is within the discretion of the Commission. The Commission could reasonably decide that all six applications for competitive rate-setting should be heard at or about the same time because the same parties could be expected to be interested. The nature of the criteria to be reviewed logically compelled that the six potential competitors be heard in a single proceeding or in related proceedings.

MCI and GTE Sprint were pressing for expedited treatment of their applications and the Commission decided that expedited treatment of all the applications was justified. All interested parties were given the opportunity to present evidence and to cross-examine witnesses who testified for AT&T of Va. There has been no showing that the expedited hearing resulted in omission of material evidence from the record. *See Lacks* v. *Commonwealth*, 182 Va. 318, 324, 28 S.E.2d 713, 715 (1944); *Anthony* v. *Commonwealth*, 179 Va. 303, 307-10, 18 S.E.2d 897, 899-900 (1942). We hold that the record shows that MCI and GTE Sprint were not prejudiced by the expedited hearing and that the Commission did not abuse its discretion in denying the motion for a continuance and conducting the hearing as scheduled.

MCI and GTE Sprint further contend that, in granting the petition of AT&T of Va. to set its rates competitively, the Commission misconstrued the applicable law and made an error of fact. MCI and GTE Sprint say that the Commission applied a presumption of automatic deregulation not authorized by Code § 56-481.1. The intent of the General Assembly, according to the appellants, was to deregulate AT&T of Va. on a gradual, step-by-step basis, but the Commission has shifted the burden of proof to those opposing the petition for immediate deregulation. Appellants complain that the result reached by the Commission, therefore, is different from the gradual deregulation approved in other cases by the Federal Communications Commission and the regulatory agencies of other states. This complaint is unpersuasive.

The Commission considered and rejected the "dominant carrier" characterization of AT&T adopted in other jurisdictions, noting that there is no Virginia statutory authorization of such classification, and proceeded under the authority of Code § 56-481.1. The Commission made the determination that the services of AT&T of Va. will be provided on a competitive basis as required by Code § 56-481.1 before granting the petition to set rates competitively. There was no requirement in the statute that equal access had to be afforded appellants before the Commission could make the crucial determination. The Code requires not a determination that competition exists but a determination that rates will be set competitively.

The Commission recognized that AT&T of Va. would be the only carrier providing service in some parts of Virginia. The Commission reasoned, however, that even in those areas AT&T of Va.

must price competitively because of the threat of competition, the requirement of the Commission that AT&T of Va. not set rates higher in one area than another ("deaverage"), and the power of the Commission to reimpose full regulation. We perceive no error of law in the rationale of the Commission.

Finally, appellants contend that the Commission made an error of fact in determining that the "level playing field" concept of fair competition exists before the equal access conversion is complete. Appellants stress their inferior access, which requires their customers to use many more dial numbers than customers of AT&T of Va., requires their customers with rotary dial telephones to use a tone generator, results in poorer transmission quality, and does not allow the carrier to offer special services, such as operator services and toll-free "800" dialing.[12]

█ The Commission decision is entitled to the strong presumption of correctness and will not be set aside as unfair or unjust unless there appears to have been a clear abuse of legislative discretion. *See Old Dominion Inc.* v. *Corp. Comm.*, 228 Va. 528, 532, 323 S.E.2d 123, 125 (1984); *Commonwealth* v. *Portsmouth*, 213 Va. 239, 241, 191 S.E.2d 220, 222 (1972). The Commission applied to the evidence the criteria suggested by Code § 56-481.1 and mandated by Rule 9. There was ample evidence to support the Commission's decision.

Dr. Frank J. Alessio, an economic consultant, testified as an expert witness for AT&T of Va. In his opinion, the interLATA markets were sufficiently competitive to justify abandonment of the traditional regulation. Markets are contestable, he testified, if there is opportunity for open entry and exit. The threat of competition in areas served only by AT&T of Va. is sufficient to cause that carrier to act as a competitor. He noted the rapid growth in Virginia of MCI and GTE Sprint in spite of unequal access and was of opinion that some customers were willing to accept resulting inconvenience in dialing to obtain long distance service at a lower price. He acknowledged that if its petition were granted un-

---

[12] Appellants' argument ignores the competitive advantage they receive from access charges discounted because of the inferior quality of their access. This cost advantage allows MCI and GTE Sprint to price their services at rates significantly lower than those charged by AT&T of Va. Furthermore, the record demonstrates substantial market penetration by these carriers and undermines their assertion that they are seriously disadvantaged during the interim period of unequal access.

conditionally AT&T of Va. could deaverage its rates in rural areas where it was the only carrier.

The Commission ruled that effective competition did not require that more than one firm serve a market or that all companies provide identical service. The Commission was of opinion that to continue traditional regulation of AT&T of Va. while not regulating other intrastate carriers would maintain rates at unnecessarily high levels. Accordingly, the Commission found that the public interest would be served by removing the rates and tariffs of AT&T of Va. from regulatory control subject to the condition that AT&T of Va. not deaverage its rates geographically and subject to close monitoring by the Commission's Division of Communications.

Appellants complain that the threat of competition, which influenced the Commission ruling, is not a factor authorized to be considered under Code § 56-481.1. The threat of competition, however, could be considered as another factor under the fourth criterion of the statute. Moreover, the crucial determination to be made by the Commission is whether rates will be competitively set. There was evidence in the record from which the Commission could determine that rates will be competitively set because of the reasonable likelihood of competition.

With the reasonable conditions imposed upon AT&T of Va. by the Commission and the power of the Commission to reimpose strict regulation, we hold that the Commission's findings and ruling were not contrary to the evidence, did not constitute an abuse of legislative discretion, and will be affirmed.

*Record No. 841881—Affirmed.*
*Record No. 841882—Affirmed.*