HOPEWELL COGENERATION LIMITED PARTNERSHIP

v.

STATE CORPORATION COMMISSION

Record No. 940885

ENRON-RICHMOND POWER CORP.

v.

STATE CORPORATION COMMISSION

Record No. 940886

COGENTRIX VIRGINIA LEASING CORP.

v.

STATE CORPORATION COMMISSION

Record No. 940887

APPOMATTOX COGENERATION LIMITED PARTNERSHIP

v.

STATE CORPORATION COMMISSION

Record No. 940888

CHESAPEAKE PAPER PRODUCTS COMPANY

v.

STATE CORPORATION COMMISSION

Record No. 940901

VIRGINIA ELECTRIC AND POWER COMPANY

v.

STATE CORPORATION COMMISSION

Record No. 940902

January 13, 1995

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Keenan, JJ., and
Poff, Senior Justice

*Stephen H. Watts, II (Mark J. LaFratta; Timothy R. Dunne; McGuire, Woods, Battle & Boothe,* on briefs), for appellant. (Record Nos. 940885 and 940888)

*Stephen H. Watts, II (Mark J. LaFratta; McGuire, Woods, Battle & Boothe,* on briefs) for appellant. (Record No. 940886)

*Stephen H. Watts, II (Mark J. LaFratta; Dennis Alexander; McGuire, Woods, Battle & Boothe,* on briefs), for appellant. (Record No. 940887)

*Edward L. Flippen (George A. Somerville; Mays & Valentine,* on briefs), for appellant. (Record No. 940901)

*Richard D. Gary (Patrick T. Horne; Pamela Johnson; Hunton & Williams,* on briefs), for appellant. (Record No. 940902)

*Anthony Gambardella (Stewart E. Farrar; Deborah V. Ellenberg; Judith Williams Jagdmann;* on brief), for appellees. (Record Nos. 940885, 940886, 940887, 940888, 940901, 940902)

JUSTICE LACY delivered the opinion of the Court.

In this utility rate case appeal, we consider whether the State Corporation Commission properly eliminated certain expenses associated with the purchase of electric power from the rate base of Virginia Electric and Power Company (Virginia Power), thereby disallowing recovery of those expenses through the rates charged the utility's electric customers.

On May 29, 1992, Virginia Power filed an application to increase its electric rates by an amount which would produce total annual operating revenues of $3,362,002,000. The application was divided into three phases with hearings held on each phase. Phase III addressed the expenses at issue here. The disputed expenses are a component of the amounts Virginia Power pays for electric power purchased from non-utility generators.

Utility purchases of electric power from non-utility generators are required by the Public Utility Regulatory Policies Act of 1978 (PURPA). 16 U.S.C. § 824 (1985). The rate a utility pays a non-utility generator for purchased power is regulated, at least in part, by federal statute and regulations. The rate must be just and reasonable, may not discriminate against small power producers, and may not exceed the "incremental cost to the electric utility of alternative electric energy." 16 U.S.C. § 824a-3(b) (1985); 18 C.F.R. § 292.304(a) (1994). The "incremental cost" is the amount the utility saves by not constructing new power gener-

ation facilities, 16 U.S.C. § 824a-3(d) (1985), 18 C.F.R. § 292.101(b)(6) (1994), and is generally referred to as the utility's "avoided cost."

Avoided cost rates cannot be calculated with precision. They depend on a number of assumptions, data inputs, estimates, and calculations. Recognizing the variables inherent in determining this type of rate, the Federal Energy Regulatory Commission (FERC) adopted regulations to guide such determinations. In those regulations, the FERC determined that, where the rate is based on estimates of the avoided costs over the life of the contract, the rate does not violate federal standards if it differs from the avoided costs at the time of the power's actual delivery. 18 C.F.R. § 292.304(b)(5) (1994). The FERC also concluded that, although the supply characteristics affecting the avoided costs may vary among generators, without standardized rates, the transaction costs associated with determining individualized rates for small power producers could make the program uneconomic for these generators. Order No. 69, Docket No. 79-55, FERC Statutes and Regulations, Regulations Preambles 1977-1981, ¶ 30,128 at 30,878 (1980). Consequently, the regulations require the states to adopt standardized avoided cost rates that non-utility generators with design capacities of 100 kilowatts or less can utilize.[1] 18 C.F.R. § 292.304(c) (1994). Finally, the states were directed to develop rules to implement PURPA and its regulations. 16 U.S.C. § 824a-3(f)(1) (1985).

In 1980, the State Corporation Commission began developing a methodology for calculating avoided costs for use in establishing the required standardized avoided cost rates for small power generators. These standardized rates were approved for Virginia Power in its Schedule 19. *Implementation of Federal Rules concerning Cogeneration (and Small Power Production Facilities Pursuant to § 210 of the Public Utility) Regulatory Policies Act of 1978 for Virginia Electric and Power Company*, Case No. PUE800102, 1983 S.C.C. Ann. Rep. 345 (Jan. 11, 1983). From its inception, the methodology used for Schedule 19 rates included a component based on a utility's liability for gross receipts taxes

---

[1] Standard rates may be used for purchases from generators with design capacities in excess of 100 kilowatts at the state's option. 18 C.F.R. § 292.304(c)(2) (1994). Virginia Power's Schedule 19 rates are applicable to purchases from non-utility generators with design capacity of up to 200 kilowatts.

(GRT). The methodology and rates have been periodically reviewed and refined but have always included the GRT factor.

In 1992, in a proceeding reviewing the Schedule 19 rates, the staff of the Commission concluded that including a GRT factor as part of the utility's avoided cost was in error. The utility's GRT liability could not be avoided by purchasing, rather than generating, electric power. These taxes would always be paid by the utility based on its gross revenues. Therefore, amounts included in the avoided cost calculation based on GRT were not, and could never be, properly included in the "avoided" or "incremental" cost as defined by federal law. Consequently, in the Commission's final order in that proceeding, the GRT portion of payments to non-utility generators was eliminated prospectively from Schedule 19 rates. *Application of Virginia Electric and Power Company*, Case No. PUE920060, 1993 S.C.C. Ann. Rep. 283 (Feb. 17, 1993).

In the present rate case, a GRT expense factor was identified in 58 electric power purchase contracts. The Commission staff recommended that the GRT expenses be allowed for such contracts only if the contract rate had been specifically approved by the Commission or the FERC or was governed by Schedule 19.[2] The staff also indicated that disallowance would not be applicable to fully negotiated contracts in which no GRT component could be identified. The hearing examiner acknowledged that the GRT expense was not an avoided cost, but rejected the staff's position and recommended that the GRT expense in all contracts be allowed for ratemaking purposes.

The Commission, after considering the hearing examiner's report and parties' comments on that report, held that GRT ex-

---

[2] Virginia Power divided the contracts into 6 categories:
1. Generators with rates based on a non-differential revenue requirement Schedule 19 that was approved by the Commission prior to the adoption of the Avoided Cost Task Force Report in Case No. PUE870081 (Dec. 30, 1988).
2. Generators that agreed to the Schedule 19 type capacity rates adopted by the Commission.
3. Generators with rates approved by the FERC.
4. Generators that obtained contracts as a result of the 1986 Solicitation.
5. Generators whose rates were specifically ordered by the Commission in an arbitration.
6. Generators with rates based on Schedule 19 that were approved after the adoption of the Avoided Cost Task Force Report in Case No. PUE870081 (Dec. 30, 1988).
The staff recommended that the GRT expenses be disallowed for contracts in categories 2 and 4.

penses were not an element of avoided cost and therefore were "unnecessary and excessive." The Commission disagreed with the hearing examiner's recommendation regarding disallowance of GRT expenses and adopted the staff's position. In its final order entered February 3, 1994, the Commission disallowed the GRT expenses for those contracts which were not specifically ordered or approved by the FERC or the Commission, but declined to "reduce an expense which the FERC or we have reviewed, approved and explicitly ordered."

Appeals were filed by Virginia Power and five non-utility power generators—Chesapeake Paper Products Company (Chesapeake), Hopewell Cogeneration Limited Partnership (HCLP), Enron-Richmond Power Corporation (Enron), Cogentrix Virginia Leasing Corporation (Cogentrix), and Appomattox Cogeneration Limited Partnership (ACLP).[3] The GRT expenses in the contracts between Virginia Power and these non-utility generators were within the group disallowed by the Commission. We consolidated the appeals for our review.

None of the appellants asserts that the GRT is an appropriate element of avoided cost. The appellants variously argue that the disallowance was in violation of federal law, erroneous as a matter of law, arbitrary and capricious, an abuse of discretion, and not supported by the record. For the reasons expressed below, we will affirm the Commission's order.

## I.

Virginia Power, Enron, Cogentrix, HCLP, and ACLP contend that PURPA and its regulations reflect a federal policy that precludes the Commission from focusing on and disallowing a single component of an avoided cost rate. Appellants argue that, when considering matters relating to an avoided cost rate, federal policy requires the Commission to analyze the rate in its entirety, to review all the data, estimates, and assumptions underlying the rate calculation, and then to redetermine the appropriate rate. Once that review is made, according to these appellants, only those amounts exceeding the redetermined rate can be deemed unreasonable and excessive and, therefore, subject to disallowance.

---

[3] The Commission's disallowance affected expenses associated with payments to a total of 18 non-utility generators; only five are parties to this appeal.

■ This argument is grounded on 18 C.F.R. § 292.304(b)(5) which allows the validity of the avoided cost rate to be determined based on relevant factors at the time the contract was executed rather than at the time the power is actually delivered. However, this provision does not support appellants' conclusion that once a contract is executed, the components of an avoided cost rate contained in that contract are insulated from regulatory review in a rate setting proceeding.[4]

■ To adopt the appellants' interpretation would forever bar a regulatory commission from reviewing and rectifying clear and possibly egregious errors which, like the GRT expense here, could never constitute a cost that could be avoided by purchasing, rather than generating, power. To preclude the Commission from eliminating improper payments when engaged in its ratemaking function is inconsistent with PURPA's requirements that the avoided cost rate be just and reasonable to the consumer.

■ In fact, the Commission did not ignore this regulation, but distinguished its applicability in this proceeding. The Commission determined that the type of error addressed here was not the type of error envisioned under 18 C.F.R. § 292.304(b)(5); it did not result from imprecise estimates, changes in circumstances or assumptions, erroneous calculations, or refinement of a methodology. This error existed at the time the contracts were executed. The GRT expense was no more reasonable and valid at the time the contracts were executed than it is now. As stated by the Commission, "[w]e draw a sharp and distinguishing line between learning curve enhancements or refinements and pure error. . . . GRT inclusion is not a refinement of the avoided cost calculation."

■ Nothing in the language of PURPA or the regulations supports the appellants' view of the role of a state public utility commission in a ratemaking proceeding. In this case, the Commission was not considering whether an avoided cost rate contained in a purchased power contract complies with the requirements of PURPA or related federal and state regulations. *Cf. West Penn*

---

[4] The non-utility generators anticipated the possibility of regulatory action impacting the avoided cost rates. For example, the Chesapeake contract states that "[s]hould the SCC at any time prohibit Vepco from recovering from its customers, payments, in whole or in part, made hereunder, the Parties will undertake to set mutually agreeable prices for the purchase of energy and capacity that will be allowed to be recovered from Vepco's customers." Each of the contracts at issue here contains a similar "regulatory out" provision.

*Power Co. v. Pennsylvania Pub. Util. Comm'n,* 623 A.2d 383 (Pa. 1993). In this case, the Commission was required to evaluate the reasonableness of an expense to determine whether that expense can properly be recovered from the utility's ratepayers. The principles applicable here are those relating to setting public utility rates and are well established under state law.

## II.

■ Setting public utility rates is a legislative function. In exercising that function, the Commission is vested with a reasonable amount of discretion. *Old Dominion Power Co., Inc. v. State Corp. Comm'n,* 228 Va. 528, 532, 323 S.E.2d 123, 125 (1984). It is the utility's burden to show that the expenses it seeks to have included in its rate base are just and reasonable. Code § 56-235.3. If the Commission's determinations are supported by the record, there is no abuse of discretion and the Commission's decision should be affirmed. *Commonwealth v. Potomac Edison Co.,* 233 Va. 165, 171, 353 S.E.2d 785, 788-89 (1987).

■ Here, Virginia Power did not show that the expense it sought to recover as an element of its avoided cost payments was just and reasonable.[5] There is no dispute that the GRT component is not an element of avoided cost. Clearly, including a GRT component in the avoided cost rate calculation makes the rate higher than it would have been without it. Therefore, the Commission was correct in holding that including the GRT expense is "unreasonable and unnecessary," regardless of the actual amount of the rate.

Nevertheless, appellants assert that the amounts paid them by Virginia Power for purchased power were reasonable and not subject to disallowance because they were below the utility's avoided cost as reflected in the Schedule 19 rates. Schedule 19 rates, however, are not applicable to the negotiated rates between Virginia Power and these non-utility generators. There is no single "avoided cost" for the utility applicable to all power purchases. Therefore, comparison of the payments made with the relevant Schedule 19 rates is not probative of either the utility's avoided

---

[5] The Commission's decision to disallow the GRT expense in the avoided cost rates does not preclude Virginia Power from recovering its gross receipts tax expenses from its ratepayers. The total GRT paid by Virginia Power was allowed as an operating expense. It is only the second recovery of the GRT expense as an element of avoided cost expense that was disallowed.

cost for the purchases from these specific non-utility generators or the reasonableness of the expenses incurred under individually negotiated contracts.

■ In summary, there is nothing in the record to support the proposition that the inclusion of the gross receipts tax component within the amounts paid for purchased power was reasonable. To the contrary, the record supports the Commission's decision that the expenses based on gross receipts taxes were unnecessary and excessive and, therefore, the Commission's decision to disallow those expenses was not an abuse of discretion. *Lake of the Woods Utility Co. v. State Corp. Comm'n*, 223 Va. 100, 110, 286 S.E.2d 201, 206 (1982); *City of Norfolk v. Chesapeake & Potomac Tel. Co.*, 192 Va. 292, 304-05, 64 S.E.2d 772, 779 (1951).

### III.

Virginia Power, HCLP, Enron, Cogentrix, and ACLP also challenge the Commission's decision to disallow the GRT factor expense for some, but not all, of the 58 affected purchase power contracts.

The Commission determined that it would be inequitable to deny recovery of the expenses in question where the Commission or the FERC had specifically approved or required the rate. Thus, the Commission disallowed the GRT expense only in those instances in which the contract rates were not subject to Schedule 19 or had not been specifically approved by the FERC or the Commission.

These appellants agree that it would be inequitable to disallow the gross receipts tax expense where the contract rates had been specifically approved by the Commission or the rate was required by Schedule 19. They also recognize that, under the filed rate doctrine, the Commission was required to accept expenses associated with the FERC approved rates. *See Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953 (1986). Nevertheless, they argue that the Commission could not discriminate in their treatment of the GRT expense and, even if such discrimination was permissible, the Commission erred in disallowing the expense in their contracts because they were based on the same considerations as those contracts in which the expense was allowed. Again, we disagree.

■ In exercising its ratemaking authority, the Commission has the authority to establish classifications. As long as the classi-

fications are not based on race, gender, religion, or other "suspect" criteria, they "will be upheld if they bear some rational relationship to a legitimate interest or purpose." *Old Dominion*, 228 Va. at 534, 323 S.E.2d at 126-27. Here the Commission recognized two classes of power purchase contracts: (1) those governed by Schedule 19 or previously approved by the Commission or the FERC; and (2) those neither governed by Schedule 19 nor approved by the Commission or the FERC. The specific prior approval of an expense is a legitimate distinction between these two classifications and bears a rational relationship to the ratemaking undertaking at issue. Therefore, the action of the Commission in treating the two classifications in different ways for purposes of the GRT expense recovery was not arbitrary or capricious or an abuse of discretion.

█ We also reject the argument that the contracts of these non-utility generators are entitled to the same ratemaking treatment as those contracts for which the GRT expense was allowed because of similarities in their avoided cost methodologies. Cogentrix and Enron argue, respectively, that the rates in their contracts were based on Schedule 19 rates and a bidding solicitations methodology ultimately approved by the FERC. Therefore, they assert, they were entitled to the same treatment as contracts approved by the FERC or subject to Schedule 19 rates. However, although Cogentrix and Enron may have chosen to model their contract negotiations after these factors, they were under no obligation to do so. Negotiations based on previously approved Schedule 19 rates or rates below those approved in other proceedings do not transform these contracts or their rates into ones specifically approved by the Commission or by the FERC. The Commission's determination that the avoided cost rates in these contracts lacked prior specific approval is supported by the record and, therefore, was not an abuse of discretion.

## IV.

█ ACLP argues that its contract was specifically approved by the Commission in an arbitration proceeding between its predecessor and Virginia Power. Thus, it also asserts that its contract should be classified with those in which the GRT expense was allowed. The final order in the arbitration proceeding, however, recites that the arbitration addressed two issues:

the effective date of a contract between [ACLP's predecessor] and Vepco for the purchase of electricity generated by [ACLP's predecessor] and sold to Vepco and whether [ACLP's predecessor] is entitled to a credit from Vepco for alleged avoided interconnection costs associated with [ACLP's predecessor's] qualifying facility.

*Arbitration Proceeding Between Continental Forest Industries, Inc. and Virginia Electric and Power Company*, Case No. PUE820052, 1983 S.C.C. Ann. Rep. 367 (Feb. 2, 1983). Accordingly, we conclude that the Commission did not err in determining that the arbitration proceeding did not approve the avoided cost rate contained in the contract.

## V.

Finally, HCLP and Chesapeake contend that the evidence is insufficient to support a finding that their contracts were based on or included a gross receipts tax component. HCLP's avoided cost rate is a "blended rate," that is, a weighted average rate based on the cost of the avoided Chesterfield 7 plant for both a 300 MW and 356.5 MW facility. Two witnesses testified, however, that a GRT component was included within the calculations and subsequent payments to HCLP. Virginia Power acknowledged that a GRT factor was included in establishing rates based on the cost of the Chesterfield 7 facility.

Similarly, Chesapeake asserts that there was no evidence to show that a GRT expense was within the avoided cost rate it negotiated with Virginia Power. Although there is no specific evidence which details the various components of the negotiated avoided cost rate in Chesapeake's contract, there was testimony that the negotiations began by utilizing the methodology adopted for Schedule 19 rates, a methodology which contained the GRT expense factor.

Applying the standards outlined above for review of the Commission's actions in utility rate cases, we conclude that the record supports the Commission's determination that a GRT factor was included in the contract rates Virginia Power negotiated with both HCLP and Chesapeake.

In summary, for the reasons stated above, we find that the decision of the Commission to disallow Virginia Power's recovery of GRT expenses contained in purchased power contracts with

HCLP, Enron, Cogentrix, Chesapeake, and ACLP did not violate federal law, was supported by the evidence, and was not arbitrary or capricious or an abuse of discretion. Accordingly, we will affirm the order of the Commission.

*Affirmed.*