Present: Carrico, C.J., Compton,[1] Lacy, Keenan, Koontz, and
Kinser, JJ., and Poff, Senior Justice

GTE SOUTH INCORPORATED

v. Record No. 991964    OPINION BY JUSTICE ELIZABETH B. LACY
                                    March 3, 2000
AT&T COMMUNICATIONS OF
VIRGINIA, INC., ET AL.

FROM THE STATE CORPORATION COMMISSION

In this appeal of right, GTE South Inc. (GTE) assigns a

number of errors to the decision of the Virginia State

Corporation Commission reducing GTE's gross operating income

by approximately $27,000,000.

I.

In 1993, the General Assembly enacted Code § 56-235.5

allowing the Commission to adopt ratemaking methods to replace

the traditional rate based, rate of return analysis specified

in § 56-235.2. The alternative forms of ratemaking had to

protect the affordability and continued availability of

quality local exchange service, not prejudice or disadvantage

any class of telephone customers or providers, and be in the

public interest.

Pursuant to this statute, the Commission approved four

alternative regulatory plans in 1994. One of those

alternative ratemaking plans was approved for use by GTE in

_____

[1] Justice Compton participated in the hearing and decision
of this case prior to the effective date of his retirement on
February 2, 2000.

Case No. PUC930036 and became effective January 1, 1995. 1994 S.C.C. Ann. Rep. at 263. Paragraph 11(A) of the alternative plan required GTE to file a rate application conforming to the rules contained in Case No. PUE850022 governing a general rate case if it sought an increase in overall regulated operating revenues. For revenue neutral rate changes, Paragraph 11(B) authorized a procedure that did not require an investigation or evaluation of overall costs and revenues for changes in basic local exchange telephone service. Paragraph 18 of the plan specifically excluded access charges from basic local exchange telephone service for purposes of pricing.

On April 6, 1995, GTE gave notice of "its intent to file a general rate case application, pursuant to the requirements of . . . PUE850022." At a June 2, 1995 meeting with the Commission staff to discuss the pending application, GTE indicated that it intended to file a revenue neutral rate application. Staff witness William Irby testified that during the meeting, GTE was told that its filing could only be done pursuant to general rate case rules because the extensive rate restructuring proposed by GTE was not contemplated by the rules applicable to revenue neutral rate changes governed by Paragraph 11(B). In its subsequent application filed June 9, 1995, GTE sought an increase in the price of many basic local exchange telephone services with a concomitant decrease in

2

access charges and intraLATA long distance rates totaling over $18,000,000. GTE's application stated that it sought these revisions "pursuant to the Commission's Rules . . . adopted in Case No. PUE850022." The accompanying schedules and testimony complied with the requirements for a general rate case.

The record shows that in the following months GTE was made aware on several occasions that the Commission's staff considered the application to be a general rate case and that the proposed new rates were subject to review and change under the "just and reasonable" standard of § 56-235.2. Responding to the Commission's staff, GTE asserted that its application was filed under the rate case rules as required under its alternative regulatory plan and that it believed its rates were just, reasonable, and affordable to its customers.

Pursuant to GTE's request, the hearing on its application was postponed and GTE filed an amended application in November 1995. The hearing before a hearing examiner was reset for June 17, 1996 and the parties prefiled their testimony.

On June 11, 1996, one week before the scheduled hearing date, GTE moved to exclude all evidence and testimony "that recommends or purports to support a reduction in GTE's overall jurisdictional operating revenues." GTE asserted that its amended filing, as well as its original filing, was revenue neutral and entitled to consideration under Paragraph 11(B) of

its alternative regulatory plan. The assertion that the application was revenue neutral was premised on decreases in access charges. Even though GTE acknowledged that under the alternative regulatory plan access charges were not included as basic local exchange telephone service for purposes of pricing, it argued that changes in access charges could properly be considered in its overall proposal under Paragraph 11(B).

The hearing examiner denied GTE's motion, finding that the application was not revenue neutral and that "every single document filed by GTE in this case, with the exception of its Motion to Exclude and certain limited portions of its rebuttal testimony, indicated its application was filed as a general rate case."

The Commission adopted the recommendations of the Hearing Examiner, finding that GTE had not filed a revenue neutral application because the alternative regulatory plan did not allow offsetting increases in regulated revenue with changes to access prices under Paragraph 11(B). The Commission also held that any increase in revenues, even to offset costs, must be made pursuant to the provisions of Paragraph 11(A). And finally, the Commission held that any application under either Paragraph 11(A) or (B) is subject to the Commission's review of proposed rates under the "just and reasonable" standard.

GTE first claims that the Commission failed to follow GTE's alternative regulatory plan because it improperly converted GTE's application under Paragraph 11(B) into a general rate case.

This record does not support GTE's contention that the Commission "converted" its application into a general rate case. Rather, the record indicates that the Commission concluded that the application was filed as a general rate case, not as a revenue neutral proceeding under Paragraph 11(B).

While the Commission's conclusion regarding the nature of GTE's application is not strictly a ratemaking decision, it incorporates consideration of ratemaking principles that are within the specialized expertise of the Commission. The Commission operates as an expert tribunal and its orders are presumed to be just, reasonable, and correct. Central Tel. Co. v. State Corp. Comm'n, 219 Va. 863, 874, 252 S.E.2d 575, 582 (1979). Accordingly, this decision of the Commission will be sustained unless not supported by the record. Hopewell Cogeneration Ltd. Partnership v. State Corp. Comm'n, 249 Va. 107, 115, 453 S.E.2d 277, 281-82 (1995).

The record as set out above provides ample support for the Commission's conclusion both under the terms of GTE's

application and its alternative regulatory plan, PUC930036. Accordingly, the Commission's holding that GTE's application was a general rate case application under Paragraph 11(A) is affirmed.

III.

GTE also cites as error certain adjustments made by the Commission to the rate base. These adjustments are clearly part of the Commission's legislative function in setting rates that are just and reasonable, and will be set aside only if the Commission "has exceeded its reasonably wide area of legislative discretion." Anheuser-Busch Cos. v. Virginia Natural Gas, Inc., 244 Va. 44, 46, 418 S.E.2d 857, 858 (1992) (citations omitted). If the record supports the Commission's determinations, there is no abuse of discretion. Hopewell Cogeneration, 249 Va. at 115, 453 S.E.2d at 281-82.

A. Affiliate Charges

The Commission required that the charges to GTE for goods and services provided by two of its affiliates, GTE Data Services and GTE Supply, be based on the affiliates' actual cost of those goods and services, including a reasonable return, rather than on the prices these affiliates charged GTE. GTE claims that this adjustment is in error because the prices charged by the affiliates were at market rates or lower and that in applying these adjustments, the Commission was

6

adopting a new policy for determining affiliate charges which had not been applied to GTE's purchases from affiliates in prior proceedings.

The Commission's adjustments were based on its conclusion that there was no true market price for these goods and services. GTE introduced evidence that the prices paid to affiliates were no higher than those paid to non-affiliates. There was also evidence that a high percentage of the affiliates' sales were to other affiliates and that some of these sales were made at "cost" rather than "market" price. While there was evidence that the prices charged GTE were competitive and reflective of the market, it was not uncontradicted. The Commission was entitled to weigh and reject GTE's evidence. Apartment House Council, Inc. v. Potomac Elec. Power Co., 215 Va. 291, 297, 208 S.E.2d 764, 768 (1974).

Furthermore, the adjustments chosen by the Commission represent an accounting adjustment, not a retroactively applied change in a rule or administrative interpretation of a statute as GTE contends. Roanoke Gas Co. v. State Corp. Comm'n, 225 Va. 186, 190, 300 S.E.2d 785, 788 (1983).

Accordingly, there is no error in the Commission's adjustment to the charges by the affiliates.

## B. Parental Debt Adjustment

7

The Commission applied a parental debt adjustment that allocated tax benefits received by GTE's parent company, GTE Corporation, to GTE and in turn to GTE's ratepayers. This adjustment is based on tax savings resulting from the parent corporation capitalizing on its equity investment in a regulated subsidiary. The tax savings is available if the parent company chooses to file a consolidated tax return. GTE complains that this adjustment was a departure from the Commission's previous policy of determining a utility's taxes on a "stand alone" basis and that the Commission's assumption that debt incurred by GTE Corporation is proportionally invested in its subsidiaries is inaccurate.

GTE does not assert that this adjustment is per se improper for ratemaking purposes, only that it should not have been used in this case. The Commission has applied adjustments to a consolidated tax return in other cases and, like other state regulatory bodies, has applied this specific adjustment in at least one other case. Application of Virginia-American Water Co., Case No. PUE950003, 1997 S.C.C. Ann. Rep. 333. This adjustment, like the adjustment discussed above, is an accounting adjustment which, although a departure from the approach used in previous cases, is within the discretion of the Commission to impose.

8

We also reject GTE's assertion that the adjustment should not have been applied because it was based on improper assumptions such as fictional jurisdictional interest and fictional jurisdictional tax savings. The ratemaking process is not a matter of scientific precision and must incorporate a number of assumptions. The Commission's judgments in fixing a reasonable rate of return are judged by a "zone of reasonableness." Commonwealth of Virginia v. Virginia Elec. & Power Co., 211 Va. 758, 769, 180 S.E.2d 675, 683 (1971)(citations omitted). There was testimony that GTE Corporation supports all subsidiary investments and that such support is not directly limited to cash flow between affiliates. Therefore, according to Commission staff, it would be improper to limit this allocation to specific debt or equity issuances of GTE Corporation to GTE. Thus, the record supports the Commission's decision to apply the parent company debt adjustment and there is no error in that decision.

### C. Separations Studies

The Commission rejected GTE's separations factor for allocating the local dial switching equipment costs between interstate and intrastate use because it found that the separations procedures did not comply with separations procedures promulgated by the Federal Communications Commission (FCC). GTE's separations factor was based on an

9

actual use measurement of seven days per office rather than overall traffic volumes throughout the period. In the absence of a current valid separations study, the Commission utilized 1988 and 1990 separations studies which were the last properly calculated separations factors.[2]

GTE contends that its separations factor complied with the FCC separations procedures and that the Commission erred in rejecting it. However, the record shows that the FCC has not approved GTE's separations procedure. GTE's witness testified that he was unaware of any state proceeding that had either approved the procedure or determined that it was in violation of the FCC procedure. Furthermore, GTE's separations factor is based on a limited period rather than traffic volume over the course of a year, ignoring traffic occurring at any other time. The Commission's staff testified that this procedure undermines the accuracy of a separations factor for overall traffic volumes. The Commission's decision to reject GTE's separations factor is supported by the record and was not an abuse of discretion. Hopewell Cogeneration, 249 Va. at 115, 453 S.E.2d at 281-82.

D. Rate Base and Depreciation

---

[2] In 1994, Contel of Virginia, Inc. and GTE Southwest merged to form GTE South. The 1988 study was of GTE Southwest's service territory and the 1990 study covered Contel's service territory.

GTE's final assignments of error are also without merit. GTE complains that its application was based on a December 31, 1994 rate base, but that the Commission erroneously adopted a rate base as of September 30, 1995. GTE's primary complaint is that, although the rate base was adjusted by increased revenues reflecting increased customer levels, no adjustments were made for the expenses necessary to support those increased customer levels. However, GTE offered no evidence of its increased expenses. The Commission's decision to rely on a current, updated rate base is consistent with this Court's determination that "the Commission, in exercising its legislative function of fixing utility rates for the future, should not be blind to the future. It may adjust the results of the test year by allowing for known changes to make the test year representative of the future." Virginia Power, 211 Va. at 771, 180 S.E.2d at 685.

Finally, GTE asserts that the Commission erred in refusing to consider GTE's new depreciation rates. These rates were offered in the rebuttal testimony of a GTE witness. The Hearing Examiner granted the Attorney General's motion to exclude this testimony because the GTE witness admitted he was not an expert on GTE's depreciation rates, and that while he could not support those rates in this proceeding, they would be supported by experts from other GTE departments in a

companion proceeding.  The Hearing Officer also determined that the depreciation testimony was untimely and did not rebut any issues raised by the Commission staff or any other party. In fact, neither GTE, the Commission staff, nor any other party in this proceeding had previously raised the issue of depreciation rates.  Similarly, the Hearing Examiner refused to adopt GTE's January 1997 suggestion to "take judicial notice" of new depreciation rates that had been approved pursuant to another Commission procedure.[3]  The Commission adopted the Hearing Examiner's decision to refuse evidence of new depreciation rates.

Based on this record, the Commission's order was not an abuse of discretion.  GTE's attempt to have the Commission incorporate new depreciation rates at that point in the proceeding was untimely.

For the above reasons, the judgment of the Commission is affirmed.

<u>Affirmed.</u>

---

[3]  The new depreciation rates had been filed with the Commission's Communications Division Director two days before they were included in the rebuttal testimony in this case. The new rates were approved by the Director effective January 1, 1996, in accordance with the Commission's Rules of Procedure.