IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30156
_____

AGRILECTRIC POWER PARTNERS, LTD.,

*Plaintiff-Counter Defendant-Appellant,*

v.

ENTERGY GULF STATES, INC., ET AL.,

*Defendants,*

ENTERGY GULF STATES, INC.,
Formerly known as Gulf States Utilities Company,

*Defendant-Counter Claimant-Appellee.*

Appeal from the United States District Court
for the Western District of Louisiana, Lake Charles Division

April 5, 2000

Before POLITZ and DAVIS, Circuit Judges, and RESTANI[1], Judge.

DAVIS, Circuit Judge:

This is an appeal by Agrilectric Power Partners, Ltd. ("Agrilectric") from an order of the District Court interpreting and applying a contract between Agrilectric and Entergy Gulf States, Inc. ("Entergy"), a utility company providing electric power to consumers in Louisiana and Texas. We agree that the "regulatory-out" price adjustment clause in the contract is enforceable and affirm the district court's judgment.

**I**

Agrilectric is a *qualified facility* ("QF") under the Public Utility Regulatory Policies Act ("PURPA"), the federal statute governing this protected category of power-generating companies. PURPA requires that utilities purchase power from QFs, but states that they cannot be forced to pay

---

[1] Judge of the U. S. Court of InternationalTrade, sitting by designation.

more for this power than their "avoided costs," the utilities' cost of self-generating the power or purchasing it from other sources.[2]

Originally entered into in 1984, the electricity sales contract between Agrilectric and Entergy was amended in 1987 and 1992. The 1992 contract established a 3.54 cents/Kwh flat-rate for the entire remaining ten-year contract term, but subjected this rate to a "regulatory-out" price adjustment clause.[3] This "regulatory-out" price adjustment clause limited the contract rate to an amount not greater than that which Entergy could legally recover from its retail customers and called for a price renegotiation if Entergy was legally prevented from making such a recovery.

In 1997, the Public Utility Commission of Texas ("PUCT") and the Federal Energy Regulatory Commission ("FERC") issued separate rulings regarding the retail rates Entergy had been and could continue to charge its retail customers. Holding that the flat-rate Entergy had been paying for Agrilectric's power and passing onto its retail customers unreasonably exceeded its "avoided costs," PUCT ordered Entergy to credit its retail customers for these overpayments. For similar reasons, FERC ordered that Entergy could not make future recoveries after July of 1997 from its retail customers of amounts Entergy had been overpaying for Agrilectric's energy.

In accordance with the contract's "regulatory-out" price adjustment clause, Entergy contacted Agrilectric to recover retroactive reimbursements for past wholesale electricity overpayments PUCT had ordered Entergy to credit its Texas retail customers and renegotiate the contract's wholesale electricity rate consistent with FERC's limitation on future retail utility rates. Agrilectric, however,

---

[2]16 U.S.C. § 824a-3(b) (providing that FERC cannot require rates exceeding "the incremental cost to the electric utility of alternative electric energy"); 18 CFR § 292.101(6) (defining avoided costs as "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities, such utility would generate itself or purchase from another source").

[3]Contained in section 3.1 of the contract, the "regulatory-out" price adjustment clause reads as follows: "**Payment to Seller**. The payments by [Entergy] to [Agrilectric] under this Agreement shall not be greater than the amount [Entergy], during any recovery period, fuel adjustment or reconciliation hearing, or any other point in time or for any period in time during the term of this Agreement, shall be allowed to recover as an energy, fuel, or other cost, in all regulatory jurisdictions. In such event, the parties shall mutually agree to the adjustment of payments to [Agrilectric]."

refused to comply with either request. Consequently, in August of 1997, Entergy unilaterally reduced the price it was paying for Agrilectric's power to bring the wholesale electricity rate in line with the amount it was able to recover from its retail customers as per their "regulatory-out" price adjustment clause.

Agrilectric filed suit for declaratory relief and specific performance in the district court. Specifically, Agrilectic requested that the contract be enforced without the "regulatory-out" price adjustment clause, that its rights and obligations be declared under its interpretation of the contract, and that Entergy be ordered to abide by the contract's 3.54 cents/Kwh flat-rate pricing provision. In response, Entergy filed a counterclaim, alleging that Agrilectic breached the contract by refusing to adjust the price in accordance with the "regulatory-out" price adjustment clause as triggered by the PUCT and FERC rulings. Entergy sought specific performance of this clause and over $2 million in damages, the amount it claims it suffered as a result of the breach.

The district court ruled that Agrilectric had breached the contract by refusing to adjust the price pursuant to the "regulatory-out" price adjustment clause. In a Supplemental Memorandum Ruling and Judgment, the court dismissed Agrilectric's claims and awarded damages to Entergy in the amount of $1.9 million plus interest.

## II.

In this appeal, Agrilectric argues that the electricity sales contract's "regulatory-out" price adjustment clause is unenforceable and federally preempted by PURPA and its associated regulations. The gravamen of its argument is that QFs and utilities are restricted from including "regulatory-out" price adjustment clauses in their wholesale power sales contracts because such price adjustment provisions give state regulatory agencies the power to encroach on the federally preempted ambit of wholesale power rates between such parties. This argument is directly contradicted by PURPA, the regulations promulgated under its authority, and cases applying these laws to wholesale electricity contracts with similar "regulatory-out" price adjustment clauses.

While PURPA establishes that regulatory agencies may not alter wholesale price terms in

3

contracts between QFs and utilities, see Freehold Cogeneration Assoc., L.P. v. Board of Regulatory Commissioners of New Jersey, 44 F.3d 1178 (3d. Cir. 1995), the PUCT and FERC rulings in this case only address Entergy's retail electricity rates, an area in which their authority has not been federally preempted, see Hopewell Cogeneration Assoc. v. State Corp. Comm., 453 S.E.2d 277 (Va. 1995). Neither the PUCT nor FERC ruling purports to regulate the wholesale electricity rate paid by Entergy to Agrilectric. Instead, both directives simply declined to permit Entergy to pass through charges to its retail customers that these agencies deemed excessive. The only effect these orders had on Agrilectric's wholesale contract with Entergy was a derivative one, which Agrilectric felt through the "regulatory-out" price adjustment clause that Agrilectric freely agreed to in its 1992 contract with Entergy. PURPA and its regulations explicitly give QFs and utilities the freedom to voluntarily contract around these restrictions and agree to whatever other rates, terms, and conditions they prefer[4], and, as a result, in no way prohibit the "regulatory-out" price adjustment clause in this contract.

While Agrilectric asserts that similar "regulatory-out" price adjustment clauses have been rejected by the courts, the cases it presents for this proposition fail to support its argument[5]. In

---

[4]18 C.F.R. § 292.301(b) ("Nothing in this subpart: (1) Limits the authority of any electric utility or any [QF] to *agree to a rate for any purchase, or terms or conditions* relating to any purchase, which differ from the rate or terms or conditions which would otherwise be required by this subpart; or (2) Affects the validity of any contract entered into *between a [QF] and an electric utility* for any purchase.") (emphasis added).

[5]Unlike the case at bar, Agrilectric cites cases involving state regulatory actions aimed at both utilities and QFs to directly alter the terms of agreed upon wholesale electricity contracts. Two cases Agrilectric repeatedly cites in its Brief are illustrative of its unfounded reliance on these rulings. In Freehold Cogeneration Associates L.P. v. New Jersey Board of Regulatory Comm'r, 44 F.3d 1178 (3d Cir. 1995), the Third Circuit Court of Appeals overturned the Board of Regulatory Commissioners of the State of New Jersey's attempt to force a QF and a utility to renegotiate power rates, negotiate a contract buy-out, or be subject to a possible Board order enforcing lower rates. In Freehold, the court simply stated that a "regulatory-out" price adjustment clause did not confer such expansive jurisdiction on state regulators to pursue this type of direct and invasive regulatory control over wholesale electricity contracts. In stark contrast, neither the PUCT nor FERC ruling in the present case is directed at altering the Agrilectric/Entergy contract price and neither administrative body claims to be exercising expanded jurisdiction by virtue of the parties' "regulatory-out" price adjustment clause. Instead, this voluntarily included provision merely responds to state retail electricity regulation and utilizes these independent regulatory decisions to alter a price-term, which both parties deliberately made variable. Likewise, in Smith Cogeneration Management, Inc.

4

particular, during oral argument, Agrilectric's counsel brought the recent case *North American Natural Resources v. Michigan Public Service Commission,* 73 F.Supp.2d 804 (W.D. Mich. 1999), to the panel's attention. While the district court in this case did overturn a state's retail price regulation altering wholesale electricity rates via a "regulatory-out" price adjustment clause similar to the one at issue in this appeal, the ruling was based on a finding that the state order threatened to deprive the QF of a rate equivalent to the utility's full "avoided costs," which PURPA entitles QFs to receive. Id. Thus, the state order's infirmity lay in imposing a retail rate that reduced the wholesale price below a statutorily guaranteed floor. Not only does *North American* not overturn the "regulatory-out" price adjustment clause in the case, it necessarily accepts this provision's validity in order to reach its conclusion and refers to the clause as an enforceable condition.[6] Consequently, this case supports the enforceability of "regulatory-out" price adjustment clauses like the one at issue in this case.

### III

For the above reasons, we agree with the district court's well reasoned opinion that the "regulatory out" price adjustment clause in the contract between Agrilectric and Entergy is enforceable.[7] Therefore, the judgment of the district court is affirmed.

---

v. Oklahoma Corp. Comm'r and Pub. Serv. Co. of Oklahoma, 863 P.2d 1227 (Okla. 1993), the Supreme Court of Oklahoma invalidated a requirement by state regulators to require "regulatory-out" price adjustment clauses in all such wholesale power contracts. Significantly, the court found the state's *requirement* of these clauses conflicted with the parties' federally guaranteed right to freely negotiate long-term fixed-rate wholesale power contracts. Thus, the court objected to the state's *imposition* of these "regulatory-out" price adjustment clauses, rather than the voluntary inclusion of these provisions as in the Entergy/Agrilectric contract.

[6]Id. at 809 (stating that the QFs "have shown that if the utilities are precluded from recovering their avoided costs, the utilities have the right to reduce their payments to plaintiffs pursuant to the 'regulatory out' provisions" in the wholesale electricity contracts and disallow the QFs from receiving a statutorily guaranteed rate).

[7]Agrilectric raises a number of issues on appeal that it failed to directly raise in the district court. Chief among these are their arguments that the *filed rate doctrine* preempts Texas from disallowing the full pass-through in retail rates of the approved and implemented Agrilectric wholesale power sales rate and that the wholesale power contract was an unenforceable *contract of adhesion*. We do not consider issues raised for the first time on appeal. See e.g., Self v. Blackburn, 751 F.2d 789, 793 (5th Cir. 1985).

AFFIRM.