COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


DAVID C. PETTY
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1648-01-3      JUDGE ROSEMARIE ANNUNZIATA
                                       SEPTEMBER 24, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                   George E. Honts, III, Judge

        Malcolm G. Crawford for appellant.

        Stephen R. McCullough, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


    A grand jury indicted David C. Petty for distributing

cocaine, in violation of Code § 18.2-248(C).  At trial, the

court refused to allow Petty to introduce expert testimony by a

police sergeant concerning proper narcotics investigation

procedures.  A jury found Petty guilty and the court sentenced

him to five years in prison, in accordance with the jury's

recommendation.  Petty appeals on the ground that the trial

court erroneously refused to admit his proffered expert

testimony.  For the reasons that follow, we affirm.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## Background

On appeal, we review the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). In October 2000, Special Agent Robert P. Chappell, of the Virginia State Police, began investigating drug use in the Goshen area of Rockbridge County. Karen Strickler assisted the police in its investigation by making controlled buys of drugs.

On November 2, 2000, the police had planned for Strickler to make a controlled buy of "crank," or methamphetamine, from Allen Petty, the defendant's brother. Before permitting Strickler to assist with the investigation, Chappell performed a background check on Strickler, searched her person, and had Special Agent Glenn Thompson search her car. Chappell searched Strickler's pockets, felt around her socks, and had her pull her shirt tight. He used the back of his hand to detect any hidden substances. Thompson performed a "thorough" search of Strickler's vehicle. They subsequently provided Stickler with a tape recorder and gave her $100 to make the purchase, the going rate for a gram of methamphetamine.

On November 2, they followed Strickler's car and observed the transaction from approximately one hundred yards away. Strickler parked her car in Petty's driveway. She disappeared

from sight for a "few seconds" as she walked to the door of the residence. When no one answered her knock, she returned to her car. David Petty approached her while she was in her car. She asked him if he had any "crank," and he said "yeah." He sold her what he claimed was a gram for $100. Strickler was unable to record the conversation with Petty because she could not start the tape recorder in time. Strickler's car remained in the officers' view the entire time. Chappell and Thompson monitored the transaction with binoculars.

After Strickler completed the buy, the police followed her to a secluded location and again searched her person and her vehicle. She handed them a small bag containing white powder, which proved to be half a gram of crank.

The defendant vigorously questioned Chappell on cross-examination concerning the meticulousness of his search of Strickler. In addition, he cross-examined Chappell as to whether he employed proper police procedures in permitting Strickler to assist with the controlled buy, in searching her before the buy, and with respect to other policies regarding a controlled buy.

> [Defense Counsel]: So, you have no written policy, or guidelines, just a case by case basis whether or not you opt to work with somebody?
>
> [Officer Chappell]: It's a case by case basis, there are some parameters, for example, I can't

work someone who is on probation.  So there are some guidelines set by the Court, for example.

  *  *  *  *  *  *  *

[Defense Counsel]:  [If I] called you up and said I want to work for the drug task force, and you were to ask me are you using drugs and I say no, that's the extent of your investigation, correct?

[Officer Chappell]:  Well, I met with her, it's not just a telephone call, but I met with her.

  *  *  *  *  *  *  *

[Defense Counsel]:  [W]hen searching a female, isn't it policy to have females search females?

[Officer Chappell]:  Show me the policy.

[Defense Counsel]:  There's no such policy?

[Officer Chappell]:  There was no female available.

  *  *  *  *  *  *  *

[Defense Counsel]:  In your opinion, Special Agent Chappell, when an informant leaves your line of sight, is that still a controlled situation?

[Officer Chappell]:  Controlled as best as possible. . . .

On re-direct, the Commonwealth also addressed this issue:

[Commonwealth's Attorney]:  And, and there was questions [sic] about whether there's policies, is there any written state police policy other than strip searches that would deal with informants or anything like that?

[Officer Chappell]:  I've reviewed the state police manual, and the Bureau of Criminal Investigations manual, and I, I'm unaware of . . .

[Commonwealth's Attorney]:  So, as far as you knew, everything you were doing on this occasion was appropriate and proper?

[Officer Chappell]:  As far as I know, yes.

After the Commonwealth rested, Petty sought to introduce expert testimony from Sergeant Dennis Patrick O'Toole of the Anne Arundel County Police Department in Maryland.  The defendant proffered:

It is our submission that [Chappell] has not followed established procedures.  Since Officer Chappell has stated that specialized training is needed to conduct a proper narcotics investigation, there's no way that a lay person can rebut that.  The only way that can be rebutted is by expert testimony.  And as for the patdown, laymen do not know what is required for a patdown.

\*   \*   \*   \*   \*   \*   \*

[E]ssentially you had Officer Ragland and Officer Chappell testify in an expert capacity that we've done everything right, no, there are no guidelines, and well, maybe we should have done this and maybe we should have done that, Your Honor, there is no way for us to rebut that but for expert testimony, to say that there are guidelines and there are ways that this should be done.

The trial court ruled that the testimony should be excluded, stating as follows:

I'm holding the evidence here in my hand, and it, I don't think it takes an expert to tell us that this could be secreted in the cleavage of a woman's breast or in her bra, or in a body cavity, or in her underpants, and the soles of her shoe . . . . That's just common practical sense.

Because we find the issue Petty raises on appeal is procedurally defaulted, we affirm the conviction.

"When . . . an objection is sustained and a party's evidence is ruled inadmissible . . . the party must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether the evidence was admissible." Lockhart v. Commonwealth, 34 Va. App. 329, 340, 542 S.E.2d 1, 6 (2001) (internal quotation and citation omitted). The party must proffer "the [witness'] expected response[s] . . . [or] any other evidence from other sources that, if believed, would [assist] the fact finder . . . ." Id.; see also Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977) (holding that "it [is] incumbent upon the defendant to make the record show the expected answer [to a question]").

In the instant case, Petty did not proffer the expert witness' expected responses to questions about police procedures and guidelines, except in a general and conclusory way. Counsel failed to state specific testimony regarding what constitutes proper police procedures and guidelines, in the witness' opinion. Without a proper proffer, we are unable to perform an analysis to determine whether any error was harmless, assuming the trial court erred in excluding the witness' testimony. See Lacks v. Commonwealth, 182 Va. 318, 325, 28 S.E.2d 713, 716 (1944); Crawford v. Commonwealth, 22 Va. App. 663, 669, 472

S.E.2d 658, 661 (1996); <u>Lowery v. Commonwealth</u>, 9 Va. App. 304, 307, 387 S.E.2d 508, 510 (1990).  We find that, since the record is silent as to the content of the excluded testimony, Petty's claim is barred procedurally.  We, therefore, affirm his conviction.

<u>Affirmed.</u>